UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KEVIN R. CAISSIE, Individually and On behalf of all other persons similarly situated | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | DOCKET NO. 08-CV-30220-MAP |
| BJ'S WHOLESALE CLUB, INC. | ) ) ) | |
| *Defendant.* | ) ) ) | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Kevin R. Caissie and Opt-in Plaintiffs Greg Bryant and Lee Smith (together, with Mr. Caissie, "Plaintiffs"), by and through their counsel, and Defendant, BJ's Wholesale Club, Inc. ("Defendant" or "BJ's"), by and through its counsel, (collectively referred to herein as the "Parties") hereby move the Court for preliminary approval of the proposed class and collective action settlement ("Settlement") set forth in Settlement Agreement, Release, and Waiver ("Settlement Agreement"),[1] attached as Exhibit A hereto. Specifically, the Parties respectfully request that the Court enter the proposed Order attached as Exhibit C hereto ("Preliminary Approval Order"):

1) authorizing the filing of Plaintiff's Amended Complaint, attached as Exhibit B hereto;[2]

---

[1]     The exhibits to the Settlement Agreement include the Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing, Tab C thereto, and the Consent to Join and Claim Form, Tab D thereto.

[2]     To the extent the Court deems it necessary, in conjunction with this Motion for Preliminary Approval, Plaintiff hereby moves for leave to amend his complaint pursuant to FED. R. CIV. P. 15(a)(2). This leave is sought with the full consent of Defendant.

1

943661.1

2) certifying the proposed collective action pursuant to Section 16(b) of the FLSA and state law class pursuant to Rule 23 of the Federal Rules of Civil Procedure, for settlement purposes only, as described in the Amended Complaint and below;

3) granting preliminary approval of the proposed Settlement;

4) appointing Klafter Olsen Lesser LLP as Class Counsel;

5) directing distribution of the proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notice"), attached as Tab C to the Settlement Agreement; and

6) setting the final fairness hearing for a date no earlier than one-hundred (100) days from the date of this motion, at the District of Massachusetts, Springfield Division.

In support of their motion for preliminary approval, the Parties submit the following incorporated memorandum.

## I.  Introduction

The parties hereby move jointly for preliminary approval of the Settlement, which has been reached after several months of arms-length and good faith negotiations, culminating in a two-day mediation in Boston before Hon. Kathleen A. Roberts (Ret.), a JAMS mediator and former federal magistrate judge with extensive experience mediating wage and hour cases such as this one.  The Settlement will provide a fair and reasonable recovery to individuals employed by Defendant BJ's as mid-managers[3] (the "Disputed Positions") and who had potential claims challenging Defendant's classification of them as exempt from receiving overtime premium

---

[3]     Specifically, the mid-manager positions at issue, which are all covered by this settlement, are as follows:  Bakery Manager, Closing Manager, Community Acquisition Representative, Deli/Seafood/Chicken Rotisserie Manager, Maintenance Recovery Manager, Meat Manager, Membership Acquisition and Retention Manager, Merchandise Assistant/Night Merchandise Assistant (including the Food, General Merchandise, and Zone II designations), Night Inventory Control Manager, Perishables Manager, Receiving/Inventory Control Manager, Receiving Manager/Night Receiving Manager, Replenishment Manager/Night Replenishment Manager, Tire Installation Manager, Front Line Shift Manager, Import-Export Manager, Jewelry Department Manager, Specialty Sales Manager, Mid-Manager In Training, Night Mid-Merchant and Mid-Merchant.

943661.1

payments under the FLSA 29 U.S.C. § 201, *et seq.*, as well as claims such individuals had under their respective states' FLSA state-law analogues.

On November 18, 2008, Plaintiff Kevin R. Caissie brought this collective and class action under both federal and Massachusetts law alleging that BJ's violated wage and hour laws by misclassifying "current and former department and other assistant managers" as exempt from the overtime provisions of the FLSA and applicable state laws and failing to pay them overtime wages for hours worked over 40 in a workweek.[4]

In the year since the filing of this lawsuit, the Parties have voluntarily exchanged information needed for mediation, sought and received a stay from this Court to allow the Parties to explore the strengths and weaknesses of their respective positions, and participated in a 2-day mediation which involved the exchange of additional information, discovery, and legal arguments on the merits.  These negotiations resulted in an agreement to settle the action on the terms set forth in the Settlement Agreement.   As the Settlement is the product of arms' length negotiations by informed counsel, the terms of the Settlement are presumptively fair and deserving of preliminary approval.

## II.    Summary of the Terms of the Settlement and Relief Presently Sought

The Settlement Agreement provides that, if approved, BJ's will pay $9,194,499.00 into a qualified settlement fund in order to resolve the claims set forth in the Amended Complaint in their entirety.  (See Settlement Agreement at § 5(a))  The qualified settlement fund will be administered by an independent and experienced third-party settlement administrator, The

---

[4]    The present action followed upon an earlier putative nationwide class and collective action that was brought by Class Counsel against BJ's in 2007.  That action settled only as to the named plaintiffs at an early stage but the investigation and information obtained during and as part of that action aided Class Counsel in evaluating the claims in this action and the decision to agree to consider mediation at an early stage of this case. (*See* Declaration of Seth Lesser at 3 ("Lesser Decl."), attached as Exhibit D hereto)

3

Garden City Group, Inc. (the "Settlement Administrator").  This amount is designed to cover all

back pay and liquidated/statutory damages available under each applicable law, as well as Class

Counsel's attorneys' fees and costs up to thirty percent (30%) of the total fund, subject to Court

approval.  In addition, the settlement includes service payments to the named Plaintiff (Kevin

Caissie) and the two opt-in party plaintiffs (Greg Bryan and Lee Smith), all of whom will be

named party plaintiffs and representatives of the Settlement Classes, in the Amended Complaint,

of up to but not exceeding $10,000.  (Id. at § 7)  Finally, the settlement fund will also be

responsible for paying one-half (50%) of the costs of notice and settlement administration, as

BJ's agrees to pay the other half.  In addition, the settlement fund will pay the full amount of the

participating class members' W-2 withholdings (and state/local withholdings if applicable) and

any employer share of payroll taxes on back wage payments made to participating claimants.

(Id. at §§ 5(a), 8)

In order to most effectively obtain resolution of all the federal and state wage and hour

claims, the Settlement encompasses both the FLSA claims, in the form of a collective action

resolution (the "Federal Class"), and the state law claims in the form of a state law Rule 23

subclass (the "State Law Class"),[5] within which are differing claims periods depending on the

varying state statutes of limitations.[6]  According to BJ's records, there are approximately 2,780

putative members of the classes combined.  Each claimant's payment will vary proportionately,

as each claimant will receive a pro rata share of the net settlement amount based upon their

---

[5]      Ohio is not included in the State Law Class because Ohio law applies the same group litigation
method as the FLSA which requires Ohio class members to opt-in, as opposed to the other states at issue
which permit "opt-out" class actions pursuant to Rule 23.

[6]      For the purposes of this settlement, the Parties stipulate that the substantive elements of the
claims do not differ, materially, from state to state.

943661.1

wages for the applicable period when compared with the wages of all potential claimants for the applicable period.[7]

The Settlement provides that each member of one of the Classes shall be sent a notice by the Settlement Administrator.  After receipt, in order to receive payment, these individuals must submit a Consent to Join and Claim Form ("Claim Form") (see Settlement Agreement at Tab D). The requirement of sending in a Claim Form does not apply to the named Plaintiff (Caissie) and two individuals who opted-in to the action prior to this Settlement (Greg Bryant and Lee Smith). These individuals will be designated the named plaintiffs in the Amended Complaint and will be paid upon consummation of the Settlement by direct mail. For individuals who send in Claim Forms (or, in the case of those individuals who will be mailed checks directly), BJ's will obtain a release of all wage and hour claims that could have been asserted against it arising out of these individuals' employment with BJ's, while in any of the Disputed Positions during the applicable period.  (See id. at § 17)  For individuals in the Rule 23 State Law Class who have not timely filed a valid and enforceable request for exclusion, such claims will be barred by the Settlement once it is final.

Using BJ's payroll data and subsequent computerized address searches when needed, the Settlement Administrator will make all reasonable efforts to ensure that each potential class member receives full and adequate notice of the Settlement. The Notice shall set forth the material settlement terms; instructions on how to submit objections to the settlement and when and where to appear at the final fairness hearing; and how to opt-out of the Settlement altogether. A copy of the proposed Notice is attached to the Settlement Agreement at Tab C.

---

[7] The percentage of the net settlement amount paid to each claimant (*i.e.*, the claimant's pro rata share) will be calculated by dividing the claimant's individual wages earned while in one of the Disputed Positions during the applicable statutory period by the total wages earned by all potential claimants while holding one of the Disputed Positions during the applicable statutory period.  That number will then be multiplied by the net settlement amount in order to determine the pro rata share to pay each claimant.

943661.1

After the Court approves the Settlement, and such approval becoming final, the completion of settlement administration and, upon further order of the Court, the Settlement Administrator will ensure distribution of the net settlement funds to the claimants.

The Parties propose that, along with granting preliminary approval of the Settlement, the Court adopt the schedule set forth below, for the Parties to effectuate the various steps in the settlement approval process under the Settlement Agreement:

| | *Event* | *Timing* |
|---|---|---|
| 1 | Notice Date | No more than fourteen (14) days after the entry of the Order preliminarily approving the settlement |
| 2 | Deadline for filing Objections | Twenty-one (21) days prior to the fairness hearing |
| 3 | Deadline for filing Requests for Exclusion | Twenty-one (21) days prior to the fairness hearing |
| 4 | Deadline by which Claim Forms must be postmarked | Thirty (30) days after the scheduled fairness hearing |
| 5 | Final Fairness Hearing | Not earlier than one-hundred (100) days after the date of this motion. |

As set forth below, the parties submit that the Settlement satisfies all the criteria for preliminary settlement approval under federal and state law. Accordingly, the Parties request that the Court grant the requested relief.

## III.   Procedural History

On November 18, 2008, Plaintiff Kevin Caissie, a former Night Merchandise Assistant at BJ's Chicopee, Massachusetts warehouse club, filed his class and collective action complaint ("complaint") in the District of Massachusetts, Springfield Division, and the case was assigned to this Court.  Through the complaint, Plaintiff asserted that BJ's misclassified him as an exempt employee and, as a result, he was denied overtime pay under the FLSA and the Massachusetts Minimum Wage Act.  He brought claims on behalf of an opt-in class under the FLSA of all "department or other assistant managers" employed by BJ's between November 4, 2005, and the

6

943661.1

entry of any judgment in this litigation.  He also brought claims on behalf of a similar opt-out

class under Rule 23 of the Federal Rules of Civil Procedure for all "Massachusetts department or

other assistant managers" for alleged violations of the overtime law under the Massachusetts

Minimum Wage Act.[8]

BJ's filed its answer to the complaint on February 25, 2009, denying all material

allegations. The case was referred to Magistrate Judge Kenneth Neiman for pretrial case

management.  Magistrate Judge Neiman held a scheduling conference on May 4, 2009, at which

time he issued an order requiring that all discovery regarding similarly situated employees and

class treatment be completed by September 8, 2009, that Plaintiff move for conditional/class

certification by November 6, 2009, and scheduled a hearing on said motion for December 16,

2009.  At that same scheduling conference, Magistrate Judge Neiman suggested that the Parties

consider settlement.

Following the scheduling conference, the Parties discussed mediation and, on July 9,

2009, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation.  The following

day,  the Court granted the order and issued a revised scheduling order as follows:

- November 9, 2009 – all discovery regarding similarly situated employees and class treatment must be completed;

- January 11, 2010 – plaintiff's certification motion due;

- January 25, 2010 – defendant's opposition to certification motion due;

- February 4, 2010 – plaintiff's reply, if any, due; and

- February 24, 2010 – hearing on the certification motion to take place before Judge Ponsor.

---

[8]     Plaintiff Caissie also sought relief on an individual basis for alleged retaliation pursuant to the
FLSA claiming that he was terminated because he filed a "Non-Payment of Wage and Workplace
Complaint" with the Massachusetts Attorney General's office.  Plaintiff Caissie has agreed to release this
claim as part of his individual settlement.

943661.1

Over the subsequent weeks, the Parties exchanged information necessary to meaningfully mediate the claims at issue in this litigation.  Plaintiffs' counsel specifically requested certain information about the class size, pay rates, the scope of employment and other information, all of which Defendant ultimately provided to Plaintiffs' counsel prior to the mediation.   In turn, both sides conducted their own analysis regarding the (1) potential liability if the case were to proceed; and, (2) the relative strengths and weaknesses of their respective positions.

Due to the extensive nature of this pre-mediation investigative process, Defendant requested to move the mediation date from August 17th and 18th to October 20th and 21st. Plaintiff agreed and, following this agreement, the parties jointly moved to continue the stay until after the October 20th and 21st mediation.  The Court did not grant this motion, as the previous order granting the stay stated that "there shall be no further extensions," but informed the Parties they could modify the deadline referenced above to complete class discovery.  The Parties jointly agreed that the final day to conduct class discovery would be December 18, 2009.

Thereafter, prior to mediation, the Parties prepared detailed mediation briefs setting forth the merits of their respective cases and then attended a 2-day mediation before Hon. Kathleen A. Roberts (Ret.), a JAMS mediator and former federal magistrate judge with extensive experience in mediating similar nationwide wage and hour cases with both state and federal law claims.

In preparation for mediation and in the course of this litigation, Class Counsel represents that it conducted significant factual investigation.  The investigation included research into the claims and analysis of the actual duties and responsibilities of the employees who held the Disputed Positions and the manner in which Defendant compensated employees who held those Disputed Positions. (Lesser Decl. at 12-13)  In addition to the knowledge obtained from an

8

943661.1

action they had previously brought against BJ's (*see* note 4, above), Class Counsel also undertook extensive interviews with Plaintiff and the two current opt-in party plaintiffs, who held Disputed Positions at BJ's to determine their actual job duties and responsibilities and the job duties and responsibilities of the other Disputed Positions.  (Id. at 12)  Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and the potential defenses thereto. Id.  This included the preparation of a position statement submitted to the mediator to facilitate the mediation and an open discussion and debate during the mediation, between the Parties and through the mediator, regarding their differing legal positions as applied to Defendant's classification of the Disputed Positions as exempt.  (Id. at 13)  In addition, since the mediation, the Parties have exchanged additional information about the mid-manager positions, and Class Counsel has conducted interviews with BJ's employees to confirm various representations made by BJ's at the mediation.

The mediation itself was conducted over the course of two long days and entirely at arms'-length.  The claims and likelihood of their success were debated between the Parties and, at the request of the mediator, the two sides made presentations to each other.  Matters addressed included the size and scope of the claims, the likelihood of success on the merits, the manner in which damages could be calculated and obtained, the likelihood of trial and what would occur at trial. (Lesser Decl. at 13)

Both Parties are of the opinion that the Agreement is fair, reasonable, and adequate. Further, Class Counsel believes that the Agreement is in the best interest of the class in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues BJ's may assert.  (Id. at 16)

9

943661.1

A resolution of this litigation at this early stage – rather than following upon a year or more of discovery, collective and class action briefing, further post-certification discovery, pretrial proceedings and potential trial and the costs attendant upon and, likely to be incurred through such activities,  most certainly inures to the benefit of the individuals who held Disputed Positions.  Indeed, Class Counsel here is particularly well aware of the risks and delays attendant upon such a wage and hour misclassification case inasmuch as Mr. Lesser and Ms. Rudich, in January 2009, were trial counsel at one of the only two FLSA misclassification cases of which we are aware that have ever been tried to a jury.  Id. That trial, which, even after an expedited schedule, occurred nearly two years following upon the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact.  While a jury verdict was obtained, the post-trial motion practice that thereupon followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime and for decertification of the collective class.   Accordingly, the proposed Settlement here, being presented to the Court a little more than a year after the case was filed, is a result well to the benefit of the Disputed Positions class members.

In addition, Class Counsel has fully advised the representative Plaintiff and the two opt-in party plaintiffs of the Settlement Agreement, who approve of and consent to the settlement and all of whom consent to be named plaintiffs in the Amended Complaint.  (Lesser Decl. at 17)

BJ's has asserted and continues to assert defenses to this action and has expressly denied and continues to deny any wrongdoing or legal liability arising out of the action.  Neither the Settlement Agreement nor any action taken to carry out the Settlement Agreement may be construed as, or may be used as an admission, concession, indication by or against BJ's or

943661.1

anyone else of any fault, wrongdoing, or liability whatsoever, or as a concession by Plaintiff as to the merits of his claims.

The Parties desire fully, finally, and forever to settle, compromise, and discharge all individual and class wage and hour claims that were asserted or could have been asserted in this or any related future actions.

## IV.    Legal Argument

### A.    The Settlement Agreement Should Be Preliminarily Approved By the Court

By this Motion, the Parties seek preliminary approval of the Settlement Agreement. "Compromises of disputed claims are favored by the courts."  Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); see also Durett v. Housing Auth. of Providence, 896 F.2d 600, 604 (1st Cir. 1990); In re Viatron Computer Sys. Corp., 614 F.2d 11, 15 (1st Cir. 1980); In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 317 (3d Cir. 1998) ("Prudential II").  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.  Federal Rule 23(e) provides that the Court must approve any settlement of a class action.  In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity." In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3rd Cir. 1995) ("GM Trucks").  The ultimate determination whether a proposed class action settlement warrants approval resides in the Court's discretion.  Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  As discussed more fully below, at this stage of preliminary approval, there is clear evidence that the Settlement Agreement is well within the range of possible approval and thus should be preliminarily approved.

11

### 1.      The standards and procedures for preliminary approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a

class action, including, as here, through a class certified for settlement purposes:

> The claims, issues, or defenses of a certified class may be settled, voluntarily
> dismissed, or compromised only with the court's approval. The following
> procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to
> all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may
> approve it only after a hearing and on finding that it is fair,
> reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying
> any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3),
> the court may refuse to approve a settlement unless it affords a new
> opportunity to request exclusion to individual class members who
> had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires
> court approval under this subdivision (e); the objection may be
> withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); Amchem Prods. v. Windsor, 521 U.S. 591, 617 (1997); Durett, 896 F.2d at

604.

In determining whether preliminary approval is warranted, the primary issue before the

Court is whether the proposed settlement is within the range of what might be found fair,

reasonable and adequate, so that notice of the proposed settlement should be given to class

members, and a hearing scheduled to determine final approval.  See MANUAL FOR COMPLEX

LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary

approval stage, "The judge must make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

12

the certification, proposed settlement, and date of the final fairness hearing.")  Preliminary

approval permits notice of the hearing on final settlement approval to be given to the class

members, at which time class members and the settling parties may be heard with respect to final

approval.  Id. at 322.  Preliminary approval is therefore the first step in a two-step process

required before a class action may be finally settled.  Id. at 320.  In some cases, this initial

assessment can be made on the basis of information already known to the court and then

supplemented by briefs, motions and an informal presentation from the settling parties.  Id. at

320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts

look to whether there is a basis to believe that the more rigorous final approval standard will be

satisfied.  See MANUAL FOURTH at § 21.633, at 321 ("Once the judge is satisfied as to the

certifiability of the class and the results of the initial inquiry into the fairness, reasonableness,

and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the

class members.")  The standard for final approval of a settlement consists of showing that the

settlement is fair, reasonable, and adequate. See, e.g., Durett, 896 F.2d at 604; Prudential II, 148

F.3d at 316-17; GM Trucks, 55 F.3d at 785.

### 2.      There is a strong basis to believe that the Settlement is fair, reasonable and adequate

Before granting final approval of a proposed class action settlement, the Court must find

that the settlement is fair, reasonable, and adequate.  See, e.g., FED. R. CIV. P. 23(e); MASS. R.

CIV. P. 23(c); Durett, 896 F.2d at 604; Sniffin v. Prudential Ins. Corp., 395 Mass. 415 (1985).

A "strong initial presumption" of fairness arises where the parties can show that "the

settlement was reached after arms-length negotiations, that the proponents' attorneys have

experience in similar cases, that there has been sufficient discovery to enable counsel to act

13

943661.1

intelligently, and that the number of objectors or their relative interest is small." Rolland v.

Cellucci, 191 F.R.D. 3, 6 (D. Mass. 2000); see also City P'ship Co. v. Atlantic Acquisition Ltd.

P'ship, 100 F. 3d 1041, 1043 (1st Cir. 1996).

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness

and adequacy of a proposed class action settlement." In re Relafen Antitrust Litig., 231 F.R.D.

52, 71-72 (D. Mass. 2005) (internal quotations omitted).  As a result, the courts in the First

Circuit rely variously on a number of factors, the most common of which include:  (1) the

complexity, expense, and duration of litigation, if the agreement is denied; (2) the amount of the

proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement;

(4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood

of success on the merits and recovering damages on their claims; (6) whether the agreement

provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good

faith dealings and the absence of collusion; (8) the settlement's terms and conditions.  See, e.g.,

Rolland v. Patrick, 562 F. Supp. 2d 176 (D. Mass. 2008); In re Relafen Antitrust Litig., 231

F.R.D. at 72; In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 93 (D. Mass. 2005);

Celluci, 191 F.R.D. at 8-9; M. Berenson Co. v. Faneuil Hall Marketplace, Inc., 671 F. Supp. 819,

822-833 (D. Mass. 1987).

In the case at bar, an examination of each of the factors to  be examined at this stage

demonstrates that there is a strong basis to preliminarily conclude that the proposed settlement is

fair, reasonable, and adequate to the members of the class.

First, with respect to complexity, expense, and duration of litigation, it is clear that the

prosecution of this case would be lengthy and expensive.  If this Settlement is not approved, the

Parties face an extended and costly battle, first regarding conditional and class certification, and

14

943661.1

then summary judgment on the merits of whether the employees who held the Disputed Positions meet the executive exemption.[9] If BJ's summary judgment motion is denied, the Parties would have to conduct expensive expert discovery and prepare for a classificaion trial, that would likely be lengthy and costly. Further, if this case does not settle, it would likely take years and, millions of dollars in legal fees, before reaching final resolution, including exhaustion of all appeals. As noted, Class Counsel's experience in a similar wage and hour misclassification case has amply demonstrated that this is a very real possibility.

Second, with respect to the amount of the proposed settlement compared to the amount potentially at issue, the Parties agree that the value of the settlement is fair and reasonable given the various challenges facing Plaintiff. Specifically, based upon the multiple legal and factual risks continued litigation would entail, and the risk that Plaintiff and the putative class could recover nothing if this litigation were to proceed, the Parties agree that this settlement amount is entirely appropriate and very favorable to the Plaintiff and the class he represents. See In re Lupron Mktg. & Sales Practices Litig., 345 F. Supp. 2d 135, 138 (D. Mass 2004) (finding the proposed settlement warranted preliminary approval because, inter alia, "the proposed settlement amount is sufficiently within the range of reasonableness.").

Third, with respect to the reaction of the class to the settlement, the Court will only be able to evaluate this factor after the notice period.

---

[9]     Litigating Plaintiff's claims would require substantial additional preparation and discovery. It ultimately would involve the depositions and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and, the preparation and analysis of expert reports and oppositions to such reports. In addition, because BJ's denies that any violations of law have occurred or are occurring and given the state of the law on the issue of job classification, BJ's would possibly appeal any adverse ruling on the validity of its classification of the Disputed Positions. In contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the class. Such a result will benefit the Parties and the court system. Certainly, putting the matter out for notice in order to determine the reaction of the classes as a whole is warranted.

15

943661.1

Fourth, with respect to the stage of proceedings and the amount of discovery completed, Class Counsel conducted a sufficient investigation of the claims asserted in the Action, as well as the recoverable damages, thus allowing them to assess the fairness of the Settlement.  Also, while the case is in a relatively early stage, the Parties submitted substantial briefs to the mediator setting forth the facts and relevant legal analysis of the case and argued to each other numerous points as to the strengths and weaknesses of each's position.  The forthright nature of the mediation process and the back-and-forths between the sides, as well as the views of an extremely respected and experienced mediator (a former federal Magistrate Judge) as to those strengths and weaknesses, *see* Lesser Decl. 13-14, focused for the Parties a the legal and factual issues presented by this case, and this Settlement will resolve the legal risks which the Parties fully appreciate at this point in the litigation.

Fifth, with respect to the Plaintiff's likelihood of success in obtaining class certification and in recovering on the merits of the case, Plaintiff recognized that obtaining a nationwide class of employees who had held the Disputed Positions in a variety of club sizes and varying locations could have been challenging.  The number of positions at issue in the case was a particular matter which distinguished this case from many other retail cases.  As a factual matter, either (1) proving "willfulness" in order to get a third year of statute of limitations under the FLSA or (2) an absence of "due care" by BJ's in order to get liquidated damages are never easy matters in a wage and hour misclassification case.  Here, Plaintiffs recognized that company documents supported the exempt status of employees who had held the Disputed Positions and would make proving their exempt status time-consuming, fact-intensive and risky and, therefore make the proof of willfulness and/or lack of due care that much more difficult.  In addition, as noted, there was a substantial legal risk that the damage analysis that would be applied would be

16

the "fluctuating work week" which would significantly diminish the value of the claims, even assuming liability was proven.  Accordingly, Plaintiffs understood that surviving partial or complete summary judgment or a motion to decertify the FLSA collective class would have presented significant hurdles.

Sixth, with respect to whether the agreement provides benefits which Plaintiffs could not achieve through protracted litigation, the Settlement provides the benefit of a prompt and fair resolution to all claims in the Amended Complaint, and the avoidance of delay of the class members' receiving their portion of the settlement amount.

Seventh, with respect to whether the Settlement was reached as the result of good faith dealings and the absence of collusion, it certainly was (and there can be no evidence or argument to the contrary).  Both Plaintiff and Defendant are represented by highly experienced and competent counsel, recognized as national experts in class action wage and hour litigation, who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients.  The Settlement was negotiated on behalf of Plaintiffs by a team of attorneys who recently won a jury trial in a similar wage and hour case on behalf of assistant managers against the office retailer Staples.  *See* Lesser Decl. at 16.   Class Counsel has also obtained other significant court approved settlements of class action wage and hour cases.  *See* Lesser Decl. at 18 at Ex. A(KOL firm resume).  The experience and reputation of counsel is paramount.  See, e.g., Cotton v. Hinton, 559 F.2d 1326 (5th Cir. 1977); In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); Fisher Brothers v. Phelps Dodge Industries, Inc., 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

943661.1

Further, not only was the Settlement Agreement the result of protracted, good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement Agreement and its material terms were negotiated with the substantial assistance of an experienced mediator, well-versed in the nuances of wage and hour class actions.  The Settlement was therefore not the product of collusive dealings, but rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel.

The $9.194 million settlement fund is a substantial result for a wage and hour class of more than 2,700 individuals and will undoubtedly result in a significant payment to each settlement class member.  The final amount will be estimated with more detail for final approval and will be determined by the scope of the claims made.  Significantly, the amount that individuals will receive will be determined based upon their wages earned while in any of the Disputed Positions during the applicable statutory period, so that fairness in payments will result.

Due to these factors, the result is well within the reasonable standard.  Plaintiff's counsel also believe that the result is appropriate when considering the difficulty and risks of litigating class claims that involve the alleged misclassification of employees under the executive exemption of the FLSA and applicable state laws and failure to pay overtime.

Accordingly, the standards for preliminary approval of the Settlement are met in this case and the Court should grant the present motion.

### B.     Provisional Certification of the Settlement Classes is Appropriate

Pursuant to the Settlement Agreement, and in accordance with the model of other similar wage and hour misclassification cases that counsel have settled in the federal courts, the Parties have stipulated, for settlement purposes only, to the following two classes:

a.     **FEDERAL CLASS** – individuals employed in the Disputed Positions for BJ's Wholesale Club, Inc., who file consents to join the Caissie action (including without limitation all individuals who

18

943661.1

timely return a Claim Form containing a consent to join the Action), within the three years prior to filing their consent to join the Action.

b. **STATE LAW CLASS –** all individuals employed in the Disputed Positions for BJ's Wholesale Club, Inc., in the following states during the indicated periods:

| | |
|---|---|
| Connecticut | January 24, 2008 through January 24, 2010 |
| Delaware | January 24, 2009 through January 24, 2010 |
| Florida | January 24, 2008 through January 24, 2010 |
| Georgia | January 24, 2008 through January 24, 2010 |
| Maine | January 24, 2004 through January 24, 2010 |
| Maryland | January 24, 2007 through January 24, 2010 |
| Massachusetts | November 18, 2005 through January 24, 2010 |
| New Hampshire | January 24, 2008 through January 24, 2010 |
| New Jersey | January 24, 2008 through January 24, 2010 |
| New York | January 24, 2004 through January 24, 2010 |
| North Carolina | January 24, 2008 through January 24, 2010 |
| Pennsylvania | January 24, 2007 through January 24, 2010 |
| Rhode Island | January 24, 2007 through January 24, 2010 |
| South Carolina | January 24, 2007 through January 24, 2010 |
| Virginia | January 24, 2007 through January 24, 2010 |

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement can only be realized through the certification of a settlement class. See, e.g., Amchem, 521 U.S. at 591; In re Lupron Marketing and Sales Practices Litigation, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citing MANUAL FOURTH); see also Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998); Prudential II, 148 F.3d at 283.

19

943661.1

Specifically, the First Circuit has established that where there is a "common disputed issue," courts should "view the issue . . . in favor of class action status." Tardiff v. Knox County, 365 F.3d 1, 5 (1st Cir. 2004); see also In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F.3d 6, 23 (1st Cir. 2008) (noting "existence of a common disputed issue weighs in favor of class certification, not against it). This is also the case in other circuits. See, e.g., Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir.1985) ("[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action"). Here, as set forth below, all the elements of Section 16(b) of the FLSA and Rule 23 are met with respect to the proposed settlement, which, accordingly, merits collective class and Rule 23 class certification.

### 1. The Elements of Rule 23(a) are Satisfied in the Present Case[10]

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

---

[10]    The prerequisites for a conditional certification of a FLSA collective action class are recognized to be more lenient than those under Rule 23 of the Federal Rules of Civil Procedure. *See*, *e.g.*, *Poreda v. Boise Cascade, L.L.C.*, 532 F. Supp. 2d 234, 239 (D. Mass. 2008) (explaining that conditional certification is regularly determined under a "fairly lenient" standard which "typically results in conditional certification of the representative class") (citing to *Trezvant v. Fidelity Employer Servs. Corp.*, 434 F. Supp. 2d 40, 43 (D. Mass. 2006)); *see also Baas v. Dollar Tree Stores, Inc.*, No. C 07-03108 JSW2009, 2009 WL 1765759, at *5 (N.D. Cal. June 18, 2009) (recognizing that "the standard to grant conditional certification of a collective action under the FLSA is more lenient than the standard to certify a class pursuant to Rule 23 [but noting that] Plaintiffs must still demonstrate that they are 'similarly situated' to the other members of the proposed collective action"); *Burk v. Contemporary Home Services, Inc.*, No. C06-1459RSM, 2007 WL 2220279, at *3 (W.D. Wash. Aug. 1, 2007) (recognizing that the FLSA "sets a more lenient standard for conditional certification of a representative class than does Rule 23 of the Federal Rules of Civil Procedure [and noting that c]ollective actions are not subject to the numerosity, commonality, and typicality rules of a class action suit under Rule 23") This memorandum, therefore, will not specifically address the standards for certifying the settlement collective action class inasmuch as it would follow *a fortiori* from meeting the Rule 23 prerequisites.

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). See, e.g., Key v. Gillette Co., 782 F.2d 5, 7 (1st Cir. 1986) ("all four requirements of Rule 23(a) must be met in order for certification of a class to be proper"); Barnes v. American Tobacco Co., 161 F.3d 127 (3d Cir. 1998); Prudential II, 148 F.3d at 308-09. Here, all four elements are easily satisfied.

### 2.     Numerosity Under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Plaintiff is not required to come before the Court and detail, to the person, the exact size of the class or to demonstrate that joinder of all class members is impossible. "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."  Advertising Special. Nat. Ass'n v. Federal Trade Comm'n, 238 F.2d 108, 119 (1st Cir. 1956) (citing 3 MOORE'S FEDERAL PRACTICE 3423 (2d ed. 1948).; see also Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp., 149 F.RD. 65, 73 (D.N.J. 1993) (stating that "[i]mpracticability does not mean impossibility" and "precise enumeration of the members of a class is not necessary").  Numerosity is indisputable here and Defendant has stipulated to a class of over 2,700.   (Settlement Agreement at 2)  Thus, numerosity is met.

### 3.     Commonality Under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  The commonality requirement is met if the plaintiff's grievances demonstrate "that there are common questions of law or fact in the case."  So. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 87 (D. Mass. 2007) (characterizing commonality

21

requirement as a "low hurdle" that "can be met by even a single common legal or factual issue").[11]

Here, commonality is met insofar as all claims of the class representatives and all members of the State Law Class are predicated on the core common issue as to whether BJ's classification of them as exempt employees was proper.  See, e.g., McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 309 (D. Mass. 2004) (holding commonality established where "class members were all employed by defendant [and c]ommon questions of law include whether [class members] were properly classified as exempt and whether the defendant acted in bad faith in so classifying" them); see also Kirby v. Cullinet Software, Inc., 116 F.R.D. 303, 306 (D. Mass. 1987) (stating evidence of commonality need not be "exhaustive," but only "illustrative" (quoting Berenson v. Fanueil Hall, 100 F.R.D. 468, 470 (D. Mass. 1984)).

This case presents legal issues of the paradigm, particularly in a settlement context, of a common issue sufficient to meet the 23(a)(2) standard.

---

[11]     Rather than requiring all questions of law or fact be common, Rule 23 requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3).  Plaintiff is not required to show that all class members' claims are identical to each other as long as there are common questions at the heart of the case; "despite some factual differences between the members of the class, commonality can still exist for purposes of 23(a)(2)." In re Dehon, Inc., 298 B.R. 206, 214 (Bankr. D. Mass. 2003) (holding that because one "can reasonably infer that certain defenses of the individual members of the putative class to Dehon's subordination strategy will be available to every other member . . . . commonality is established").

     Indeed, only a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). See, e.g., 1 Robert Newberg, NEWBERG ON CLASS ACTIONS, § 3.10; accord So. States Police Benevolent Ass'n, 241 F.R.D. at 87.  "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a *single issue common* to all members of the class. Therefore, this requirement is easily met in most cases." Natchitoches Parish Hosp. Servs. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (quoting 1 Newberg, NEWBERG ON CLASS ACTIONS, § 3.10) (emphasis added).

22

### 4.      Typicality Under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.[12]  The typicality requirement is satisfied when the class members' claims "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members, and . . . are based on the same legal theory."  Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996); see also Marisol A. v. Giuliani, 126 F.3d 372 (2d Cir. 1997) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability").  Notably, a "finding of typicality will generally not be precluded even if there are 'pronounced factual differences' where there is a strong similarity of legal theories."  In re Carbon Black Antitrust Litig., 2005 WL 102966, *12 (D. Mass. Jan. 18, 2005) (quoting In re Linerboard Antitrust Litig., 203 F.R.D. 197, 207 (E.D. Pa. 2001)); see also Hayworth v. Blondery Robinson & Co., 980 F.2d 912, 923 (3d Cir. 1992) ("Factual differences will not render a claim atypical if the claim arises from the same event or practice of course of conduct that gives rise to the claims of the class members, and it is based on the same legal theory.").[13]

This requirement is also met by the State Law Class proposed by Plaintiff Caissie since he held one of the Disputed Positions and was classified as exempt by BJ's during that time (and

---

[12]      The commonality and typicality requirements of Rule 23(a) "tend to merge."  Gen.Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 157 n. 13 (1982).  The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  See, e.g., id.; In re Screws Antitrust Litigation, 91 F.R.D. 52, 56 (D. Mass. 1981) (highlighting requirement that class interests be adequately protected); Prudential II, 148 F.3d at 311; Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977); Asbestos School Litig., 104 F.R.D. at 429-30.

[13]      In other words, "[t]he 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' case than on the similarity of the legal and remedial theories behind their claims." In re Relafen Antitrust Litig., 231 F.R.D. 52, 69 (D. Mass. 2005) (quoting Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)); Weiss v. York Hosp., 745 F.2d 786, 809-10 (3d Cir. 1984).

23

not paid overtime as a result). Thus, Plaintiff's claims are "typical" with regard to the entire class. Further, this requirement is met by the proposed State Law settlement class as Plaintiff's claims allegedly all arise from a common course of conduct by Defendant in treating all present and former employees in the Disputed Positions as exempt wherever they worked in the company. Thus, for the purpose of settlement, Plaintiff contends that the case each member of the State Law Class would put on would be essentially the same (hence, commonality) and the named class representatives would, themselves put on that case (hence, their claims are typical).

### 5.     Adequacy Under Rule 23(a)(4)

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." In the First Circuit, "[t]he requirement of adequate representation is met [where] [1] the named plaintiffs' interests are not antagonistic with those of the rest of the class but rather involve the identical legal issue, and [2] the plaintiffs' attorneys are qualified to conduct the litigation." Bouchard v. Sec. of Health & Human Servs., No. Civ.A. 78-0632-F, 1982 WL 594675, at *7 (D. Mass. Jan. 11, 1982); see also Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985) (stating Rule 23(a)(4) requires "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation"). These two components are designed to ensure that absentee class members' interests are fully pursued.

Adequacy is easily met here – Plaintiffs' attorneys, proposed Class Counsel, are experienced and competent in complex litigation and have an established track record in employment law, including specifically, litigation and settlement of wage and hour cases. (See Lesser Decl. at 18 & Ex. A). In turn, the class representative of the State Law Class, Mr. Caissie, has no interests antagonistic to the class and has demonstrated his allegiance to this litigation

24

through his patience and participation in the settlement process on behalf of all of these putative class members.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiffs now turn to consideration of the factors which, independently, justify certification of the State Law Class under subdivision 23(b)(3).

### 6.     The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

Plaintiffs' proposed State Law Class also meet the requirements of Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R CIV. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U. S. at 623. Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues.  Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (noting "courts have usually certified Rule 23(b)(3) classes even though individual issues were present"); In re Sugar Ind. Antitrust Litig., 73 F.R.D. 322, 344 (E.D. Pa. 1976).

The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." Hochschuler v. G.D. Searle & Co., 82 F.R.D. 339 (N.D. Ill. 1978);

943661.1

see also In re TJX Cos. Retail Sec. Breach Litig., 246 F.R.D. 389, 398 (D. Mass. 2007) ("Need for individualized damages decisions does not ordinarily defeat predominance requirement for class certification where there are disputed common issues as to liability."); Dietrich, 192 F.R.D. 119 (in determining whether common issues of fact predominate, "a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class").  Rule 23(b)(3) does not require that all questions of law or fact be common. See, e.g., Smilow, 323 F.3d at 39 (1st Cir. 2003) (pointing out Rule 23(b)(3) "requires merely that common issues predominate"); In re Telectronics Pacing Systems, 172 F.R.D. 271, 287-88 (S.D. Ohio 1997). In this regard, courts generally focus on the liability issues and whether these issues are common to the class.  If so, particularly in the settlement context, common questions are held to predominate over individual questions. See id.

Plaintiff asserts that common questions of law and fact predominate.  All of the claims of the members of the State Law Class arise out of common corporate-wide policies defining the roles of the employees who hold or held the Disputed Positions and classifying them as exempt from the overtime requirements of federal and state laws.  As a result, no employee who held any of the Disputed Positions and worked over 40 hours in a workweek, has been paid any overtime compensation.  In addition, solely for the purposes of settlement, the parties stipulate that the substantive standards for establishing liability under the wage and hour laws of each of these States are not materially different.[14]  Therefore, the State Law Class presents common operative

---

[14]      The state law claims are brought under statutes that track the FLSA and, as a result, have similar standards to the FLSA with respect to liability and damages. However, a few of these state laws make it easier for plaintiffs to recover or, expand the damages available to putative class members.  For example, the New Jersey and Pennsylvania statutes arguably have standards for liability that are slightly easier for plaintiffs to meet.  Further, in certain states (including, for approximately the last year, Massachusetts), there are provisions for liquidated damages that are more employee-friendly than in other jurisdictions. Irrespective of these small differences, when the settlement is considered as a whole, the differences between these state laws do not overshadow their fundamental similarity to each other and the FLSA.

943661.1

facts and common questions of law which predominate over any legal or factual variations in the application of the classification and compensation policies to individual benefits analysts nationwide.

These common questions of law and fact include, without limitation:  (a) whether the standard set of duties performed by employees in the Disputed Positions are non-exempt duties under the applicable state laws; (b) whether BJ's policy of classifying employees in the Disputed Positions as exempt is proper under applicable state laws; and, (c) whether BJ's has violated applicable state laws by failing to pay employees in the Disputed Positions overtime wages owing and due them each pay day and/or upon termination.  These common questions of law and fact suffice for this settlement class, to present a predominance of common issues.

The Parties further stipulate for settlement purposes that superiority is likewise met in the settlement context because this settlement will resolve the pending lawsuit against BJ's in a single, consolidated proceeding – obviating the need for multiple, parallel lawsuits. Moreover, given the commonality of claims relating to BJ's  standard policy of BJ's, there would be little or no interest for each class member to proceed with their own case – indeed, the plan of distribution treats all class members equitably by providing payments based upon their salaries.

Accordingly, strictly for the purposes of settlement, the Parties agree that there is no danger that individual variations, type or magnitude of damage suffered by individual class members will affect predominance, as the class representative has suffered the same type of damages – and seeks the same type of relief – as all members of the proposed class.

Finally, resolution of the State Law claims asserted in this litigation by class settlement is superior to the individual adjudication of class members' claims for relief.  In particular, the

Thus, for the purposes of this settlement, the parties agree that any such differences are immaterial and the settlement should be approved. *See Wolfert v. Transamerica Home First Inc.*, 439 F.3d 165 (2d Cir. 2006) (discussing the materiality of differences across jurisdictions in class actions).

943661.1

settlement provides class members with an ability to obtain prompt, predictable and certain relief, whereas individualized litigation carries with it great uncertainty, risk and costs, and provides no guarantee that the allegedly injured parties will obtain necessary and timely relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials, including trials in each lawsuit being settled herein.

Accordingly, strictly in the settlement posture in which the case now stands, the State Law Class is appropriate and should be certified for settlement purposes.

**C.    The Proposed Notice Provides Adequate Notice To The Members of the Classes**

**1.    The Notice Satisfies Due Process**

The Parties propose that the Settlement Administrator send, by first class mail, a Notice (attached as Tab C to the Settlement Agreement) and a Claim Form (in the form as attached as Tab D to the Settlement Agreement) to each member of the settlement classes, as defined above and in the Settlement Agreement (see Settlement Agreement at § 10(a)).

The Parties propose that the Notice and Claim Form be sent to all known and reasonably ascertainable members of the classes based on BJ's records.  The Settlement Agreement also provides that the Claims Administrator will ensure that all members of the classes receive notice, by taking all reasonable steps to trace the addresses for whom a Notice or Claim Form is returned by the post office as undeliverable, including tracking of all undelivered mail and performing additional address searches.  The Settlement Administrator will then promptly re-mail the Notices and Claim Forms to members of the classes for whom new addresses are found.

This notice plan is consistent with class certification notices approved by numerous state and federal courts and is, under the circumstances of this case, the best notice practicable.

28

943661.1

Indeed, Class Counsel had almost substantially the exact same notice plan adopted in another multi-state FLSA/state law settlement. see, e.g., Wright v. Linkus Enters., Inc., No. 2:07-cv-01347-MCE-CMK, 2009 WL 2365436, at *7-8 (E.D. Cal. July 29, 2009) (holding notice involving same mail procedures as here meets both Rule 23(e) requirement that "proposed settlement is fundamentally fair, adequate, and reasonable" and "Rule 23(c)(2)(B) requirement that the Court direct 'best notice that is practicable under the circumstances'") (quoting FED. R. CIV. P. 23(c)(2)(B), (e)); Davis v. Abercrombie & Fitch Co., No. 08 CV 01859(PKC)(AJP), 2009 WL 1542552, at *1-4 (S.D.N.Y. June 2, 2009) (approving issuance of notice to class using same method as applied here); In re M.L. Stern Overtime Litig., No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *6-7 (S.D. Cal. Apr. 13, 2009) (finding same mail procedure as applied here to be the "best notice practicable"); Adams v. Inter-Con Security Sys., Inc.,  No. C-06-5428 MHP, 2007 WL 3225466, at *3-4 (N.D. Cal. Oct. 30, 2007) (finding that notice using same mail procedure as here "satisfies the notice requirements of Rule 23(e), and . . . all other legal and due process requirements").

### 2.	The Proposed Class Notice is Accurate, Informative and Easy to Understand

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.  Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-in to the federal class or opt-out of the state class. See, e.g., Weinberger v. Great Northern Nekoosa Corp., 925 F.2d 518, 523 (1st Cir. 1991) (stating "the court's power to approve or reject a settlement under Rule 23(e) enables the court to ensure fairness for the class members" (quoting 3B MOORE'S FEDERAL PRACTICE ¶ 23.91 at 23-533 to 23-534)); Prudential II, 148 F.3d at 326-27; Valentino v.

29

943661.1

Carter-Wallace, Inc., 97 F.3d 1227 (9th Cir. 1996).  Similarly, pursuant to Section 16(b) of the FLSA, class members are entitled to notice to afford them with an adequate opportunity to opt-in to the Action.  29 U.S.C. § 216(b).

Here, the proposed Notice provides clear and accurate information as to the nature and principal terms of the Settlement, including the monetary and other relief the settlement will provide members of the classes (as well as an explanation of the method of allocating and paying net settlement amount monies to class members who submit a valid and timely Claim Form and of the claims process), the procedures and deadlines for opting-in to the Federal Class or opting-out of the State Law Class and submitting objections, the consequences of taking or foregoing the various options available to members of the classes , and the date, time and place of the final settlement approval hearing.  See MANUAL FOURTH at § 21.312.  Pursuant to FED. R. CIV. P. 23(h), the proposed class notice also sets forth the maximum amount of attorneys' fees and costs which may be sought by present party plaintiffs and their counsel.

Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  See, e.g., 4 NEWBERG ON CLASS ACTIONS at §§ 8.21, 8.39; MANUAL FOURTH at §§ 21.311-21.312.

**D.      A Final Fairness Hearing Should be Scheduled**

The Court should schedule a final fairness hearing to determine that final approval of the Settlement is proper.  The fairness hearing will provide a forum to explain, describe or challenge the terms and conditions of the Settlement, including the fairness, adequacy and reasonableness of the Settlement.  At that time, moreover, Class Counsel will present their application for their fees and expenses pursuant to Rule 23(h) as well as for the award to the named class representatives.  Accordingly, the Parties request that the Court schedule the final fairness

943661.1

hearing for no earlier than one-hundred (100) days from the date of this motion, as required by 28 U.S.C. § 1715, at the District of Massachusetts, Springfield Division.

## V.     Conclusion

For the foregoing reasons, the Parties respectfully request that this Court enter the Preliminary Approval Order, attached as Exhibit C hereto, which, inter alia: (1) authorizes the filing of Plaintiff's Amended Complaint; (2) certifies the Federal Class and State Law Classes for settlement purposes only; (3) grants preliminary approval of the Settlement; (4) appoints Klafter Olsen Lesser LLP as Class Counsel; (5) directs distribution of the proposed Notice to all members of the Classes regarding settlement of the claims against Defendant BJ's on a final and complete basis, in accordance with this motion; and (6) sets a date for the final fairness hearing for no earlier than one-hundred (100) days after the date of this motion, at the District of Massachusetts, Springfield Division.

Respectfully submitted,

| | |
|---|---|
| /s/  Seth R. Lesser, Esq. | /s/  Ellen C. Kearns, Esq. |
| Seth R. Lesser, Esq. | Ellen C. Kearns, Esq. |
| Fran L. Rudich, Esq. | Christopher M. Pardo, Esq. |
| Klafter Olsen & Lesser LLP | Constangy, Brooks & Smith, LLP |
| Counsel for Plaintiff | Counsel for Defendant |
| Two International Drive, Suite 350 | 535 Boylston Street, Suite 902 |
| Rye Brook, NY 10573 | Boston, MA 02116 |
| Telephone:     914.934.9200 | Telephone:     617.849.7880 |
| Facsimile:     914.934.9220 | Facsimile:     617.849.7870 |

Dated:  February 16, 2010

943661.1

## CERTIFICATE OF SERVICE

I, Fran L. Rudich, hereby certify that, on this 16th day of February, 2010, this document was filed through the CM/ECF system and will be sent electronically to all counsel of record.

/s/ Fran L. Rudich
Fran L. Rudich

943661.1