UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
KEVIN R. CAISSIE, LEE SMITH, and GREG :
BRYANT, Individually and on Behalf of : Civ. No. 08-cv-30220 (MAP)
All Other Persons Similarly Situated, :
 :
    Plaintiffs :
 :
   v. :
 :
BJ'S WHOLESALE CLUB, INC., :
 :
    Defendant. :
_____:

**MEMORANDUM FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT, FOR AWARD OF ATTORNEYS' FEES AND EXPENSES AND FOR
APPROVAL OF INCENTIVE AWARDS TO THE CLASS REPRESENTATIVES**

Seth R. Lesser, Esq.
Fran L. Rudich, Esq.
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: 914.934.9200
Facsimile: 914.934.9220

Attorneys for Plaintiffs and the Class

## <u>TABLE OF CONTENTS</u>

I.  Introduction ...................................................................................................................1

II.  Procedural History ........................................................................................................3

III.  Summary of the Terms of the Settlement, the Notice That Was Sent and The Class's
     Reaction ......................................................................................................................8

IV.  Legal Argument ..........................................................................................................11

     A.  Standards and Procedures for Final Approval of Class Action Settlements..........11

     B.  Consideration of the Relevant Factors ................................................................12

          1.  The Risks of Establishing Liability and Damages .........................................13

          2.  The Complexity and Likely Duration of this Litigation Through Trial.........15

          3.   The Stage of the Proceedings and the Amount of Discovery Completed.....16

          4.  The Settlement Is the Result of Arm's-Length Negotiations Between
              Experienced Counsel ...............................................................................18

          5.  The Reaction of the Class to the Settlement Favors Approval .....................20

          6.   The Recommendation of Experienced Counsel............................................21

          7.  The Range of Reasonableness of the Settlement Amount ............................22

     C.  Class Counsels' Request for An Award of Fees and Reimbursement of Expenses
         Should Be Approved..........................................................................................23

              a.   Class Counsels' Request for Attorneys' Fees Is Reasonable and
                   Should be Approved by the Court .................................................23

     D.  Class Counsel's Request for Reimbursement of Expenses Should Be....................34

     E.  The Inceptive Awards to Kevein Caissie, Greg Bryant and Lee Smith
         Should Be Approved..........................................................................................35

V.  Conclusion ..................................................................................................................36

# TABLE OF AUTHORITIES

**Cases:**

*A.H. Phillips v. Walling*, 324 U.S. 490 (1945) .......................................................................... 34

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997) .............................................................. 11

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) ........................................ 30

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................................ 23, 25

*Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59 (D. Mass. 1999) ................ 12, 13, 15, 20

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981) ........................................................................ 12

*City of Detroit v. Grinnell Corp.*, 495 F.2d at 452 (2d Cir. 1974) ............................................... 22

*City P'ship Co. v. Atlantic Acquisition Ltd.,* 100 F.3d 1041 (1st Cir. 1996) ............................... 12

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ............................................. 22

*Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998) ........................................................................ 35

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ............................................................. 12, 19, 22

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152 (S.D.N.Y. 2008) ............................................ 29

*Deckler v. Ionics Inc., et al.,* No. 03-cv-10393-WGY (D. Mass Apr. 4, 2005) ............................ 27

*Dolgow v. Anderson*, 43 F.R.D. 472 (E.D.N.Y. 1968) ................................................................ 33

*Dooley v. Liberty Mutual Ins. Co.*, C.A. No. 01- 11029-REK (D. Mass.) ................................... 32

*Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1 (1st Cir. 1999) ................................. 12

*Durrett v. Housing Auth. of Providence,* 896 F.2d 600 (1st Cir. 1990) ................................ 11, 12

*Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ............... 19

*Furtado v Bishop*, 635 F.2d 915 (1st Cir. 1980) ........................................................................ 25

*Genden* v. *Merrill Lynch,* 700 F. Supp. 208 (S.D.N.Y. 1998) .................................................... 35

*Giusti-Bravo v. United States Veterans Admin.*, 853 F. Supp. 34 (D.P.R. 1993) .................. 20, 22

*Godshall v. Franklin Mint Co.*, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004) ............................... 35

*Gov't Emples. Hosp. Ass'n v. Serono Int'l*, 246 F.R.D. 93 (D. Mass. 2007) ................................. 26

*Greenspun v. Bogan,* 492 F.2d 375 (1st Cir. 1974) ....................................................................... 20

*In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109 (D.N.J. 2002) ............................................... 27

*In re Cendant Corp.*, 232 F. Supp. 2d 327 (D.N.J. 2002) .............................................................. 35

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197 (D. Me. 2003) 13

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F.Supp. 659
     (D. Minn. 1974) ......................................................................................................................... 19

*In re Equity Funding Corp.,* 603 F.2d 1353 (9th Cir. 1979) .......................................................... 11

*In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735 (1st Cir. 1999) .................................................... 34

*In re First Commodity Corp. Customer Accounts Litig.,* 119 F.R.D. 301
     (D. Mass. 1987) .......................................................................................................... 11, 12, 19

*In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99 (D.R.I. 1996) ......................................... 12, 13, 25

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768
     (3d Cir. 1995) ........................................................................................................................... 11

*In re Ikon Office Solutions Inc. Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) .............................. 23

*In re Immunix Sec. Litig.*, 864 F. Supp. 142 (W.D. Wash. 1994) ................................................. 35

*In re Lupron Mktg. & Sales Prac. Litig.*, 228 F.R.D. 75 (D. Mass. 2005) ............................. 13, 31

*In re M.D.C. Holdings Secl. Litig.*, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990).... 27

*In re Molten Metal Tech., Inc. Sec. Litig.*, C.A. No. 97-10325-MLW ......................................... 26

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998)........... 11, 15

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410 (S.D.N.Y. 1997).............. 27

*In re Relafen Antitrust Litig.*, 231 F.R.D. 52 (D. Mass. 2005) ............................................ *passim*

*In re Rent-Way*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................ 35

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294 (3rd Cir. 2005) ..................................................... 33

*In re RJR Nabisco Inc. Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,984
(S.D.N.Y. Aug. 24, 1992) ........................................................................................... 33

*In re S. Ohio Correction Facility*, 175 F.R.D. 270 (S.D Ohio 1997) ......................................... 35

*In re Sequoia Sys. Sec. Litig.*, Fed. Sec. L. Rep. (CCH), ¶ 48,089 (D. Mass. 1993) ................... 20

*In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................... 31

*In re Thirteen Appeals of Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,

56 F.3d at 295 (1st Cir. 1995) ................................................................................. 24, 26, 28

*In re Viatron Computer Sys. Corp. Litig.*, 614 F.2d 11 (1st Cir. 1980) ...................................... 11

*In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379 (D. Ariz. 1989) ......... 22

*In Re: Lupron(R) Marketing and Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456
(D. Mass. Aug. 17, 2005) ........................................................................................... 28

*Kane v. Gage  Merchandising Services, et al.*, C.A. No. 00-40185-NMG ................................. 32

*Lan v. Ludrof*, 2008 WL 763763 (W.D. Pa. March 21, 2008) ................................................ 33, 35

*Loughran v. USAA, Inc.*, C.A. No. 00-12387-RWZ .................................................................... 32

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819
(D. Mass. 1987) ......................................................................................... 13, 21, 22, 34

*Macone v. Pongratz*, C.A. No. 07-11360-PBS ........................................................................ 32

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y.) ........................................... 26

*McLaughlin v. Liberty Mutual Ins. Co.*, C.A. No. 01-11029-REK (D. Mass.) ........................... 33

*Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977) ......................................... 11

*Officers For Justice v. Civil Serv. Comm'n.*, 688 F.2d 615 (9th Cir. 1982) ................................ 22

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005) ............................................. 35

*Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53 (1st Cir. 2004) ...................................... 10

*Russell v. Wells Fargo and Co.*, 2009 U.S. Dist. LEXIS 107044 (N.D. Cal. Nov. 17, 2009)...... 14

*See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970) .......................................................... 34

*Stillman v. Staples Inc.*, No. 07-849 (KSH) (PS) (D.N.J.) ..................................................... 16, 30

*Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005) ........................................................ 35

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) .................................................. 10

*Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35 (1st Cir. 1999) ........................................................ 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................... 25

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................... 23

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ................................................................... 19

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ...................................................................... 11

*Wilson v. The County*, C.A. 06-1368 (D.N.J.) ............................................................................ 29

*Wood v. ZC Management, LLC*, C.A. No. 07-30076-MAP (D. Mass.) ........................................ 32

## Other Authorities:

James W. Moore, *Moore's Federal Practice*  (3d ed. 1997) .................................................... 21, 22

William B. Rubenstein et al., *Newberg on Class Actions* (4th ed. 2008) .................................... 35

DOL Wage & Hour Opinion Letter, FLSA2009/3 (Jan. 14, 2009) ................................................ 14

Manual for Complex Litigation (Fourth) ................................................................................. 25, 26

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006) ................................................................. 35

## Rules:

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

Fed. R. Civ. P. 54 ................................................................................................................ 1, 23

Named Plaintiffs Kevin R. Caissie, Greg Bryant and Lee Smith ("Plaintiffs" or "Class Representatives"), by and through their counsel, respectfully submit this memorandum in support of their motion for an order pursuant to Fed. R. Civ. P. 23(e) granting final approval of the settlement of this action as a class action, awarding attorneys' fees and expenses to Class Counsel pursuant to Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2), awarding an incentive payment to Class Representatives, and providing for the relief detailed in the Proposed Order for Final Approval of Settlement, together with any other relief that this Court finds to be just, proper and equitable.

Specifically, Plaintiffs and Class Counsel seek

(1) final approval of the Settlement;

(2) approval to pay the Claims Administrator, Garden City Group, in an amount expected to be $150,000, but not more than $165,000;

(3) an award of attorneys fees in the amount of $2,470,894 (26.9% of the Settlement Fund) and $11,620.70 in expenses ($10,620.70 incurred to date and $1,000 for anticipated expenses in connection with the finalization of the settlement); and

(4) $10,000 in service awards to each Class Representative.

## I. <u>Introduction</u>

Plaintiffs are pleased to be able to submit this motion for final approval of the $9,194,499 settlement in this action, a settlement that is being presented for final approval just over a year and a half after the case was initiated.

The reaction of the Class speaks to the quality of this settlement.[1]

---

[1] Although the Settlement covers two classes – the Federal Class an the State Law Class (*see* note 4, below) – for convenience, this memorandum will refer to the two classes as the "Class" and the members of the classes as "Class Members."  For all practical purposes at the final

1

First, there has not been a single objection to any part of the Settlement.   Each Class Member was informed, in the Claim Form, as to the individualized amount that he or she would receive should the Court approve the Settlement and the requested attorneys' fees and costs, service awards and the costs of settlement administration.  *See* Affidavit of Lance Blair ("Blair Aff.") contained as Exhibit A to the *Declaration of Seth R. Lesser in Support of Final Approval and Other Relief* ("Lesser Final Approval Decl.") at Ex. B (the form of the Claim Form that was sent with notice as sent ("Notice")).  In fact, as set out below, the actual distribution to each claimant will be <u>higher</u> than the individualized amounts that were on the Claim Form because Class Counsel will be reducing their fee and expense award request to 27% from the 30% of the settlement fund that the motion for preliminary approval set forth.

Second, as June 9, 2010, the claims rate from the Class is 77%.  This 77% of the Class members returning their claim (and release) forms represents 86% of the total value of the proposed Settlement amount available to the Class Members.  Inasmuch as the claims period remains open, and another reminder mailing is anticipated to be made, Class Counsel (and Defendant and its counsel) are optimistic that a 80% participation rate, representing approximately a 90% value claims rate, will be achieved, a truly exceptional result.

Third, it is further worth noting that Class Counsel has spoken to dozens of Class Members who have expressed pleasure at their expected awards, and the awards represent a matter of no small solace to many of their families who have had economic difficulties during the recent past.  *See* Lesser Final Approval Decl. ¶ 9.

Fourth, although the Notice that was sent to the Class stated that Class Counsel would request fees and costs of no more than 30%, Class Counsel has determined that their request will

---

approval hearing, there is no distinction between the Federal Class and the State Law Class, as established by the Preliminary Approval Order.

be for 27%, a 10% reduction from the 30%. Specifically it will be for $2,470,894 in fees (26.9%) and $11,620.70 in costs (0.1%). Inasmuch as the individualized amounts that Class members were informed on their notices was derived by using a possible 30% attorney award number (and as to which no objections were received), the actual amount that the Class members will receive will be 3% higher, which will certainly be appreciated by them.

Class Counsel respectfully suggest to the Court that the $9,194,499 settlement of the Class Members' claims against BJ's Wholesale Club, Inc. ("BJ's" or "Defendant") provides Class Members with expeditious and exceptional relief, warranting approval of the entirety of the proposed Settlement and all relief requested herein.

As a final introductory note, Class Counsel would like to acknowledge the aid and cooperation that they have received from the Defendant and its counsel, who have been entirely professional and cooperative throughout the notice and claims period to date.

## II.   Procedural History

The procedural history of this wage and hour misclassification case was previously set forth for the Court at pages 6-11 in the Joint Motion for preliminary approval (Docket No. 23-5). That discussion is repeated here for the convenience of the Court.

On November 18, 2008, Plaintiff Kevin Caissie, a former Night Merchandise Assistant at BJ's Chicopee, Massachusetts warehouse club, filed his class and collective action complaint ("complaint") in the District of Massachusetts, Springfield Division, and the case was assigned to this Court. Through the complaint, Plaintiff asserted that BJ's misclassified him as an exempt employee and, as a result, he was denied overtime pay under the FLSA and the Massachusetts Minimum Wage Act. He brought claims on behalf of an opt-in class under the FLSA of all "department or other assistant managers" employed by BJ's between November 4, 2005, and the entry of any judgment in this litigation. He also brought claims on behalf of a similar opt-out

class under Rule 23 of the Federal Rules of Civil Procedure for all "Massachusetts department or other assistant managers" for alleged violations of the overtime law under the Massachusetts Minimum Wage Act.[2]

BJ's filed its answer to the complaint on February 25, 2009, denying all material allegations. The case was referred to Magistrate Judge Kenneth Neiman for pretrial case management.  Magistrate Judge Neiman held a scheduling conference on May 4, 2009, at which time he issued an order requiring that all discovery regarding similarly situated employees and class treatment be completed by September 8, 2009, that Plaintiff move for conditional/class certification by November 6, 2009, and scheduled a hearing on said motion for December 16, 2009.  At that same scheduling conference, Magistrate Judge Neiman suggested that the Parties consider settlement.

Following the scheduling conference, the Parties discussed mediation and, on July 9, 2009, the Parties filed a Joint Motion to Stay Proceedings Pending Mediation.  The following day, the Court granted the order and issued a revised scheduling order as follows:

- <u>November 9, 2009</u> – all discovery regarding similarly situated employees and class treatment must be completed;

- <u>January 11, 2010</u> – plaintiff's certification motion due;

- <u>January 25, 2010</u> – defendant's opposition to certification motion due;

- <u>February 4, 2010</u> – plaintiff's reply, if any, due; and

- <u>February 24, 2010</u> – hearing on the certification motion to take place before Judge Ponsor.

---

[2]     Plaintiff Caissie also sought relief on an individual basis for alleged retaliation pursuant to the FLSA claiming that he was terminated because he filed a "Non-Payment of Wage and Workplace Complaint" with the Massachusetts Attorney General's office.  Plaintiff Caissie has agreed to release this claim as part of his individual settlement.

Over the subsequent weeks, the Parties exchanged information necessary to meaningfully mediate the claims at issue in this litigation.  Plaintiffs' counsel specifically requested certain information about the class size, pay rates, the scope of employment and other information, all of which Defendant ultimately provided to Plaintiffs' counsel prior to the mediation.  In turn, both sides conducted their own analysis regarding the (1) potential liability if the case was to proceed; and (2) the relative strengths and weaknesses of their respective positions.

Due to the extensive nature of this pre-mediation investigative process, Defendant requested to move the mediation date from August 17th and 18th to October 20th and 21st. Plaintiff agreed and, following this agreement, the parties jointly moved to continue the stay until after the October 20th and 21st mediation.  The Court did not grant this motion, as the previous order granting the stay stated that "there shall be no further extensions," but informed the Parties they could modify the deadline referenced above to complete class discovery.  The Parties jointly agreed that the final day to conduct class discovery would be December 18, 2009.

Thereafter, prior to mediation, the Parties prepared detailed mediation briefs setting forth the merits of their respective cases and then attended a 2-day mediation before Hon. Kathleen A. Roberts (Ret.), a JAMS mediator and former federal magistrate judge with extensive experience in mediating similar nationwide wage and hour cases with both state and federal law claims.

In preparation for mediation and in the course of this litigation, Class Counsel represents that it conducted significant factual investigation.  The investigation included research into the claims and analysis of the actual duties and responsibilities of the employees who held the Disputed Positions and the manner in which Defendant compensated employees who held those Disputed Positions.  Lesser Final Approval Decl. ¶¶ 16-18.  In addition to the knowledge

obtained from an action they had previously brought against BJ's, Class Counsel also undertook

extensive interviews with the Plaintiffs to determine their actual job duties and responsibilities

and the job duties and responsibilities of the other Disputed Positions.  (Id. at ¶ 10)  Class

Counsel also investigated and analyzed the applicable state and federal law as applied to the facts

discovered with regard to the claims asserted and the potential defenses thereto.  Id.  This

included the preparation of a position statement submitted to the mediator to facilitate the

mediation and an open discussion and debate during the mediation, between the Parties and

through the mediator, regarding their differing legal positions as applied to Defendant's

classification of the Disputed Positions as exempt.  (Id. at ¶¶ 10, 18)  In addition, since the

mediation, the Parties have exchanged additional information about the mid-manager positions,

and Class Counsel has conducted interviews with BJ's employees to confirm various

representations made by BJ's at the mediation.

The mediation itself was conducted over the course of two long days and entirely at arms'-

length.  The claims and likelihood of their success were debated between the Parties and, at the

request of the mediator, the two sides made presentations to each other.  Matters addressed

included the size and scope of the claims, the likelihood of success on the merits, the manner in

which damages could be calculated and obtained, the likelihood of trial and what would occur at

trial.  Lesser Final Approval Decl. ¶ 18.

Both Parties are of the opinion that the Agreement is fair, reasonable, and adequate.

Further, Class Counsel believes that the Agreement is in the best interest of the class in light of

all known facts and circumstances, including the significant risks and delays of litigation that are

presented by the defenses and potential pre-trial and appellate issues BJ's may assert.  Lesser

Final Approval Decl. ¶ 21. A resolution of this litigation at this early stage – rather than

following upon a year or more of discovery, collective and class action briefing, further post-certification discovery, pretrial proceedings and potential trial and the costs attendant upon and, likely to be incurred through such activities, most certainly inures to the benefit of the individuals who held Disputed Positions.  Indeed, Class Counsel here is particularly well aware of the risks and delays attendant upon such a wage and hour misclassification case inasmuch as Mr. Lesser and Ms. Rudich, in January 2009, were trial counsel at one of the only two FLSA misclassification cases, of which we are aware, that have ever been tried to a jury.  Id. That trial, which, even after an expedited schedule, occurred nearly two years following upon the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact.  Id. at ¶ 22 (detailing same).  While a jury verdict was obtained, the post-trial motion practice that thereupon followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime and for decertification of the collective class.  Accordingly, the proposed Settlement here, being presented to the Court a little more than a year after the case was filed, is a result well to the benefit of the Disputed Positions class members.

In addition, Class Counsel has fully advised the Plaintiffs of the Settlement Agreement, who approve of and consent to the settlement and all of whom consented to be named plaintiffs in the Amended Complaint.

BJ's has asserted and continues to assert defenses to this action and has expressly denied and continues to deny any wrongdoing or legal liability arising out of the action.  Neither the Settlement Agreement nor any action taken to carry out the Settlement Agreement may be construed as, or may be used as an admission, concession, indication by or against BJ's or

anyone else of any fault, wrongdoing, or liability whatsoever, or as a concession by Plaintiffs as to the merits of their claims.

The Parties desire fully, finally, and forever to settle, compromise, and discharge all individual and class wage and hour claims that were asserted or could have been asserted in this or any related future actions.

### III.   Summary of the Terms of the Settlement, the Notice That Was Sent and The Class's Reaction

As set forth at pages 3-6 of the Joint Motion in support of preliminary approval, the Settlement Agreement provides that, if approved, BJ's will pay $9,194,499 into a qualified settlement fund ("Settlement Fund") to resolve the claims set forth in the Amended Complaint in their entirety. (See Settlement Agreement at § 5(a)) The qualified settlement fund will be administered by an independent and experienced third-party settlement administrator, who has acted as notice administrator, The Garden City Group, Inc. (the "Settlement Administrator"). This amount shall cover all back pay and liquidated/statutory damages available under each applicable law, as well as the Class Counsel's attorneys fees and costs and the service payments to the Class Representatives, in the amounts awarded by the Court upon the present motion. In addition, 50% of the Settlement Administrator's costs will come out of the Settlement Fund.[3]

As previously set forth and as preliminarily approved by the Court, the Settlement is in the form of a hybrid FLSA collective action and Rule 23 state law class, which encompasses differing statutes of limitations based upon state laws. *See* Blair Aff. at Ex. A at Official Court Notice at 3 (Lesser Decl. Ex. A) (portion of notice relating to state limitations periods).[4]

---

[3] The Settlement Fund will also pay the full amount of the participating class members' W-2 withholdings (and state/local withholdings if applicable) and any employer share of payroll taxes on back wage payments made to participating claimants. (Id. at §§ 5(a), 8).

[4] In its Preliminary Approval Order, the Court approved the following two classes:

Pursuant to this Court's Preliminary Approval Order, each member of the Class was sent, by first class mail, a long-form notice containing an individualized Claim Form that set out what he or she would receive, assuming approval.[5]  *See* Blair Aff.  Exs. A & B.  Notices were sent to

a.  **FEDERAL CLASS** – individuals employed in the Disputed Positions for BJ's Wholesale Club, Inc., who file consents to join the Caissie action (including without limitation all individuals who timely return a Claim Form containing a consent to join the Action), within the three years prior to filing their consent to join the Action.

b.  **STATE LAW CLASS –** all individuals employed in the Disputed Positions for BJ's Wholesale Club, Inc., in the following states during the indicated periods:

| | |
|---|---|
| Connecticut | January 24, 2008 through January 24, 2010 |
| Delaware | January 24, 2009 through January 24, 2010 |
| Florida | January 24, 2008 through January 24, 2010 |
| Georgia | January 24, 2008 through January 24, 2010 |
| Maine | January 24, 2004 through January 24, 2010 |
| Maryland | January 24, 2007 through January 24, 2010 |
| Massachusetts | November 18, 2005 through January 24, 2010 |
| New Hampshire | January 24, 2008 through January 24, 2010 |
| New Jersey | January 24, 2008 through January 24, 2010 |
| New York | January 24, 2004 through January 24, 2010 |
| North Carolina | January 24, 2008 through January 24, 2010 |
| Pennsylvania | January 24, 2007 through January 24, 2010 |
| Rhode Island | January 24, 2007 through January 24, 2010 |
| South Carolina | January 24, 2007 through January 24, 2010 |
| Virginia | January 24, 2007 through January 24, 2010 |

[5]  The percentage of the net settlement amount paid to each claimant (*i.e.*, the claimant's pro rata share) will be calculated by dividing the claimant's individual wages earned while in one of the Disputed Positions during the applicable statutory period by the total wages earned by all potential claimants while holding one of the Disputed Positions during the applicable statutory

each of the 2,803 Class members.  Blair Aff. ¶¶ 4-6.  In addition, on May 21, 2010, a reminder

mailing was sent to the 888 Class members who had not responded to the initial mailing, which

mailing consisted of the full Notice packet and a personalized buck slip to remind Class

members further of the Settlement.  Also not required by the Settlement, but agreed upon by the

parties, included in all the mailings of the full Notice packet was a letter from BJ's president

encouraging participation.  In addition, GCG has maintained a website (which has had 729 visits)

and a toll-free telephone number (which has had 544 callers).  *See* Blair Aff. ¶¶ 7-11.

As of June 10, 2010, Claim Forms have been returned, representing approximately 77%

of the claimants.  Inasmuch as the amount each Class Member will receive is individual to that

person, when considered in terms of the amount of the recovery the Settlement makes available,

the 77% of claimants represents 86% of the value of the Settlement available to Class members.

Blair Aff. ¶ 13.  The claim period ends on July 21, 2010. Although not required by the

Settlement Agreement, the parties have agreed to send a final reminder postcard to those Class

members who have not responded as of June 17, 2010.  Id. at ¶ 12.  It can reasonably be expected

that a claims participation rate of 80% or better, representing a claims value rate of

approximately 90%, can be achieved, a most substantial – almost unheard of – rate.  Class

Counsel submits that there can be no doubt that the notice program complied with the

requirements of Fed. R. Civ. P. 23 and due process.[6]

---

period.  That number will then be multiplied by the net settlement amount in order to determine
the pro rata share to pay each claimant.

Due to a calculation mistake by the Claims Administrator, the original notice that was
sent to the Class had to be corrected with a revised notice.  *See* Blair Aff. ¶ 7.

[6] *See Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 56-57 (1st Cir. 2004) (mailing to all
known class members and publication notice found to comport with the requirements of due
process); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice

IV.     **Legal Argument**

A.     **Standards and Procedures for Final Approval of Class Action Settlements**

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 317 (3d Cir. 1998) ("*Prudential II*").  Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources.

Federal Rule of Civil Procedure 23(e) of the Federal Rules of Civil Procedure mandates that a class action cannot be settled without court approval:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

*See Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997); *Prudential II*, 148 F.3d at 316. In a class action, the "court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity."  *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995).   Accordingly, courts in the First Circuit consistently favor the settlement of disputed claims.  *Durrett v. Housing Auth. of Providence,* 896 F.2d 600, 604 (1st Cir. 1990); *In re First Commodity Corp. Customer Accounts Litig.,* 119 F.R.D. 301, 313 (D. Mass. 1987) (Wolf, J.); *In re Viatron Computer Sys. Corp. Litig.,* 614 F.2d 11, 15 (1st Cir. 1980); *see also* Local Rule 16.4(A) (providing that "[t]he judicial officer shall encourage the resolution of disputes by settlement. . . .").  The courts' preference for settlements over continued litigation is especially important in cases involving class actions where "there is

generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing met requirements of Rule 23 and due process); *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 429 (5th Cir. 1977); *In re Equity Funding Corp.,* 603 F.2d 1353, 1361 (9th Cir. 1979) (notice found sufficient where it informed class members of the subject matter of the litigation, terms of the proposed settlement and the proposed plan of allocation of the settlement proceeds).

an overriding public interest in favor of settlement." *Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Durrett v. Housing Auth. of Providence,* 896 F.2d at 604; *In re Fleet/Norstar Sec. Litig.,* 935 F. Supp. 99, 105 (D.R.I. 1996).

In deciding whether to approve the settlement of a class action, the Court must find that the settlement is fair, reasonable and adequate. *Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 7 (1st Cir. 1999). *See also City P'ship Co. v. Atlantic Acquisition Ltd.,* 100 F.3d 1041, 1043 (1st Cir. 1996); *First Commodity Corp. Customer Accounts Litig.*, 119 F.R.D. at 313.

To evaluate the fairness of a settlement, the Court does not "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981). The Court should not, therefore, turn the settlement hearing into a trial and reach any conclusions on the issues of fact and law that underlay the merits of the dispute. *See Fleet/Norstar Sec. Litig.,* 935 F. Supp. at 106 (Boyle, J.) ("In passing on a settlement agreement, it is not appropriate to adjudicate the merits of the dispute."). An evidentiary hearing or full-blown trial would defeat the very purpose of a settlement – avoiding a sharply contested trial and unnecessary litigation.

## B.    Consideration of the Relevant Factors

Judicial evaluation of the fairness of a proposed settlement in a class action involves a limited inquiry into whether the possible rewards of litigation with its risks and costs are outweighed by the benefits of the settlement. This determination is not based on a "single inflexible litmus" test; instead it "reflects its studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999).

Specifically, courts within this Circuit most often weigh the following factors in assessing the fairness of proposed class action settlements: (1) the risks of establishing liability; (2) the risks of establishing damages; (3) the complexity and likely duration of the litigation through trial; (4) the stage of the proceedings and the amount of discovery completed; (5) whether the negotiations were conducted at arm's-length; (6) the reaction of the Class to the Settlement; (7) the recommendation of experienced counsel; and (8) the range of reasonableness of the settlement amount in light of the best possible recovery and the attendant risks of litigation.  *See, e.g., Bussie v. Allmerica Financial Corp.,* 50 F. Supp. 2d at 72; *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D. Me. 2003); *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.,* 671 F. Supp. 819, 822-23 (D. Mass. 1987) (Wolf, *J.*) ("*Faneuil Hall*").  These factors are not exclusive and different factors may predominate in different factual contexts.  *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (Young, J.) (outlining and applying nine factors); *but see Fleet/Norstar Sec. Litig.*, 935 F. Supp. at 106-07 (emphasizing only certain factors).

### 1.   The Risks of Establishing Liability and Damages

"As any experienced lawyer knows, a significant element of risk adheres to any litigation taken to binary adjudication." *In re Lupron Mktg. & Sales Prac. Litig*., 228 F.R.D. 75, 97 (D. Mass. 2005).  Accordingly, courts routinely approve settlements where plaintiffs would have faced significant legal or factual obstacles to establishing liability.  *See e.g. Relafen Antitrust Litig.*, 231 F.R.D. at 73; *Fanueil Hall*, 671 F. Supp. at 823.

This action certainly presented a number of areas of risk in terms of establishing both liability and damages.  As to liability, the ultimate issue as to whether the Classes Members were or were not properly classified as exempt depends on a qualitative weighing test, and, in order to

obtain a three year period of liability for the FLSA claims, would depend on a proof of

willfulness.  Further, as to damages, there is a most significant risk attendant upon what damage

model that Court would adopt, one that is currently the subject of debate between employers and

employees in wage and hour cases and, were the Court to adopt defendant's model, the damages

obtainable would have been cut in half. [7]

Although Class Counsel believe that Plaintiffs' case is strong (and Defendant would

disagree), it is subject to non-negligible risks as to liability and damages.  A trial on the merits

would involve significant risks to Plaintiffs because of the fact-intensive nature of proving

liability under the FLSA and the Labor Law and the defenses available to Defendant, which

would pose substantial risk as to both liability and damages.  Further, while Plaintiffs believe

that they could ultimately establish Defendant's liability on these claims, this would require

significant factual development and, by its nature, a complex trial, as noted.  While Plaintiffs

believes that their claims have strength, Class Counsel are experienced and realistic, and

understand that the resolution of liability issues, the outcome of the trial, and the inevitable

appeals process are inherently uncertain in terms of outcome and duration.  The proposed

settlement alleviates this uncertainty.  This factor weighs heavily in favor of final approval.

---

[7] The dispute in FLSA cases as to damages is whether damages are determined pursuant to a "salary" basis of pay calculation (wherein an employee gets time and a half for each hour worked over the expected work week) or a fluctuating work week calculation (pursuant to which an employee gets half time for each hour worked over the expected hours).  This is an issue that is matter of significant debate between employers and employees in wage and hour cases, and an area in which a Department of Labor letter sided with the employers' viewpoint last year.  *See* DOL Wage & Hour Opinion Letter, FLSA2009/3 (Jan. 14, 2009); *see also Russell v. Wells Fargo and Co.,* 2009 U.S. Dist. LEXIS 107044 (N.D. Cal. Nov. 17, 2009) (according DOL letter little deference and finding for employees).  In a decision hotly argued by BJ's throughout the mediation, *Valerio v. Putnam Assoc., Inc.*, 173 F.3d 35, 40 (1st Cir. 1999), the First Circuit effectively appeared to adopt a FWW analysis (although Plaintiffs believe the matter was not squarely before the Court).  While the issue remains in the air, the potential of a FWW analysis (which more than reduces damages by half in most cases) represented a particular threat at trial.

### 2.   The Complexity and Likely Duration of this Litigation Through Trial

To determine whether a proposed Settlement is fair, adequate and reasonable, the Court must balance the continuing risks of litigation against the benefits afforded to members of the class and the immediacy and certainty of a substantial recovery.  A balancing of these factors strongly supports approval of the Settlement.  The issues in this wage-and-hour misclassification case would be complex and would take a significant period of time to litigate; by reaching a favorable settlement prior to formal motion practice, extended discovery or trial, Class Counsel has sought to avoid significant expense and delay, and instead ensure recovery for the class. *See Bussie v. Allmerica Financial Corp.*, 50 F.Supp.2d at 66; *Relafen Antitrust Litig.*, 231 F.R.D. at 72 ("Costs would include . . . the cost of a four-week trial which promises to feature a battle of various experts."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement favored where "trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court").

If the litigation continued, the Parties would have face an extended and costly battle, first regarding conditional and class certification, and then summary judgment on the merits of whether the employees who held the Disputed Positions meet the executive exemption.[8]  If BJ's

---

[8]   Litigating Plaintiff's claims would require substantial additional preparation and discovery.  It ultimately would involve the depositions and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and, the preparation and analysis of expert reports and oppositions to such reports.  In addition, because BJ's denies that any violations of law have occurred or are occurring and given the state of the law on the issue of job classification, BJ's would possibly appeal any adverse ruling on the validity of its classification of the Disputed Positions.  In contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the class.  Such a result will benefit the Parties

summary judgment motion is denied, the Parties would have to conduct expensive expert discovery and prepare for a classification trial, which would likely be lengthy and costly. Further, if this case did not settle, it would likely take years and, millions of dollars in legal fees, before reaching final resolution, including exhaustion of all appeals.  Indeed, Class Counsel here is particularly well aware of the risks and delays attendant upon such a wage and hour misclassification case inasmuch as Mr. Lesser and Ms. Rudich, in January 2009, were trial counsel at one of the only two FLSA misclassification cases, of which we are aware, that have ever been tried to a jury, *Stillman v. Staples Inc.*, No. 07-849 (KSH) (PS) (D.N.J.).  That trial, which, even after an expedited schedule, occurred nearly two years following upon the filing of the case, consumed six weeks of time, cost hundreds of thousands of dollars and presented innumerable contested issues of both law and fact.  While a jury verdict was obtained, the post-trial motion practice that thereupon followed was quite extensive and included, among other things, motions for judgment notwithstanding the verdict, to have the damages reduced pursuant to the "fluctuating work week" basis of calculating overtime and for decertification of the collective class.  Appeals were then filed, which only were withdrawn upon the reaching of a substantial settlement.  As in *Stillman*, were Plaintiffs here to prevail at trial, as in *Stillman*, any judgment could be appealed, thereby extending the duration of the litigation.

This Settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner.  As noted, the present motion is being heard just a year and a half after the case commenced, a substantial savings of time that warrants approval.

### 3.   The Stage of the Proceedings and the Amount of Discovery Completed

---

and the court system.  Certainly, putting the matter out for notice in order to determine the reaction of the classes as a whole is warranted.

The purpose of considering the stage of the proceedings is to ensure that the factual record is sufficient to support an informed judgment as to the adequacy of the settlement proposal. *See M. Berendon Co. v. Faneuil Hall Marketplace Inc.*, 671 F. Supp. at 819, 823, 825 (D. Mass. 1987). Here, while there was no formalized discovery, Class Counsel had done significant pre-filing investigation both in this case and in connection with the earlier filed action against BJ's that preceded this case.[9]

Class Counsel also undertook extensive interviews with the original and the two opt-in plaintiffs, all of whom held Disputed Positions at BJ's to determine their actual job duties and responsibilities and the job duties and responsibilities of the other Disputed Positions. Lesser Final Approval Decl. ¶ 10. Class Counsel also investigated and analyzed the applicable state and federal law as applied to the facts discovered with regard to the claims asserted and the potential defenses thereto. Id.

When the possibility of mediation arose, to ensure that it could meaningfully proceed, we specifically requested certain information about the class size, pay rates, the scope of employment and other information, all of which Defendant ultimately provided to Plaintiffs' counsel prior to the mediation. In turn, both sides conducted their own analysis regarding the (1) potential liability if the case were to proceed; and, (2) the relative strengths and weaknesses of their respective positions. In fact, it was because of the need for additional information that required the initial mediation session to be postponed. Lesser Final Approval Decl.¶ 16.

---

[9] The present action followed upon an earlier putative nationwide class and collective action that was brought by Class Counsel against BJ's in 2007. That action settled only as to the named plaintiffs at an early stage but the investigation and information obtained during and as part of that action aided Class Counsel in evaluating the claims in this action and the decision to agree to consider mediation at an early stage of this case. Lesser Final Approval Decl. ¶ 10.

During the mediation, the merits of the claims and the facts and circumstances (and the law) were vigorously debated, between the Parties and through the mediator. The mediation itself was conducted over the course of two long days and entirely at arms'-length.  The claims and likelihood of their success were debated between the Parties and, at the request of the mediator, the two sides made presentations to each other.  Matters addressed included the size and scope of the claims, the likelihood of success on the merits, the manner in which damages could be calculated and obtained, the likelihood of trial and what would occur at trial.  Lesser Final Approval Decl. ¶¶ 18, 21.

Following upon the mediation and the settlement of the case in principle, Class Counsel engaged in confirmatory discovery of some specific points that were raised during the mediation, including interviews of Class Members and the interview of a BJ's Human Resource executive. Lesser Final Approval Decl. ¶ 10.

In short, the combination of investigation, exchange of information, and inquiry permitted Class Counsel to get to the heart of the issues in the case in an effective and efficient manner without the time, expense and fine-tuning involved in formal discovery. Lesser Final Approval Decl. ¶¶ 9-11.  Accordingly, the parties' exchange of information here meets the standard of being part of "an aggressive effort" to litigate the case and counsel were fully well-equipped to evaluate the strengths and weaknesses in the case.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive").

    **4.   The Settlement Is the Result of Arm's-Length Negotiations Between Experienced Counsel**

An additional factor for the Court to consider here is the existence of arm's-length negotiations by experienced trial counsel in reaching this Settlement.  In lieu of a more extended inquiry into the claims asserted and result achieved, federal courts most often focused on whether the settlement was achieved through "arm's-length negotiations" by counsel who have "the experience and ability . . . necessary to effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *see also First Commodity Corp. Customer Accounts Litig.*, 119 F.R.D. at 311-14.  Here, there can be no real doubt that the Settlement was reached as the result of good faith dealings and with the absence of collusion (and there can be no evidence or argument to the contrary).  Both Plaintiffs and Defendant are represented by highly experienced and competent counsel, recognized as national experts in class action wage and hour litigation, who have litigated wage and hour cases aggressively and successfully on behalf of their respective clients.  The Settlement was negotiated on behalf of Plaintiffs by a team of attorneys who recently, as just noted, won a jury trial in a similar wage and hour case on behalf of assistant managers against the office retailer Staples.  Class Counsel has also obtained other significant court approved settlements of class action wage and hour cases.  *See* Lesser Final Approval Decl. at Ex. B (KOL firm resume).  Experience and reputation of counsel is paramount.  *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F.Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Further, not only was the Settlement Agreement the result of protracted, good faith, arm's length negotiations between experienced and informed counsel on both sides, but the Settlement

Agreement and its material terms were negotiated with the substantial assistance of an experienced mediator, well-versed in the nuances of wage and hour class actions.  The Settlement was therefore not the product of collusive dealings, but rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel.

The $9,149,999 million settlement fund is a substantial result for a wage and hour class of 2,803 individuals and will undoubtedly result in a significant payment to each settlement class member, averaging $2,341.24.  Lesser Final Approval Decl. ¶ 28.  Significantly, the amount that individuals will receive was determined based upon their wages earned while in any of the Disputed Positions during the applicable statutory period, so that fairness in payments will result.

The Settlement was clearly the product of arm's-length negotiations and this factor is met.

### 5.   The Reaction of the Class to the Settlement Favors Approval

The response by Class Members is an important factor in evaluating the fairness, reasonableness and adequacy of the Settlement.  *Relafen Antitrust Litig.*, 231 F.R.D. at 72 (class's reaction supported approval where the "overall reaction to the settlement has been positive" and the objections asserted by class members did not focus upon the total settlement consideration); *Greenspun v. Bogan,* 492 F.2d 375, 380 (1st Cir. 1974) ("The absence of any detailed opposition is a relevant, if not always reliable, factor in assessing the fairness of [a proposed settlement]."); *In re Sequoia Sys. Sec. Litig.*, Fed. Sec. L. Rep. (CCH), ¶ 48,089 at 98,729 (D. Mass. 1993) (Woodlock, J.); *Bussie v. Allmerica Financial Corp.*, 50 F. Supp. 2d at 77; *Giusti-Bravo v. United States Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("Another indication of the fairness of a class action settlement is the lack of, or small number of, objections."); *Faneuil Hall*, 671 F. Supp. at 823.

20

Consideration of the reaction of the Class is particularly appropriate where, as here, to date no objections to the Settlement have been received.  As noted above, not a single objection to the Settlement has been received in response to the Notice that was mailed (and in some instances re-mailed) to the Settlement Classes.

In addition, both the Notice and Summary Notice advised members of the Class of their right to exclude themselves from the Class.  Only a single request for exclusion was received and that was from an individual who had an alleged individual claim against BJ's (and, in fact, Class Counsel was contacted by that individual's counsel and conferred as to the opt-out's unique situation).  Lesser Final Approval Decl. ¶ 7.  As this Court has noted, "any prospective class member who has received the class notice and failed to request exclusion from the class has judged retrospectively for himself that his interests have been adequately represented in the negotiation of the proposed settlement agreement."  *Faneuil Hall*, 671 F. Supp. at 824.

Essentially, therefore, not a single member of the Settlement Classes has voiced any form of disapproval as to the Settlement.  Rather to the contrary, as noted, Class Counsel received a significant number of calls regarding the Settlement from class members and, without exception, the response has been overwhelmingly favorable, sometimes effusively.  Lesser Final Approval Decl. ¶ 9.  This overwhelmingly favorable response is a powerful indication that the Settlement is fair and adequate.

### 6.  The Recommendation of Experienced Counsel

Counsel's opinion should be accorded significant weight in determining the fairness of the Settlement.  *See* 3B James W. Moore, *Moore's Federal Practice* ¶ 23.1.24[2] (3d ed. 1997).  Counsel on both sides of this action have substantial experience in this area of litigation. Klafter & Olsen LLP is a nationally recognized member of the plaintiffs' bar, specializing in complex

class litigation, including wage and hour claims.  *See* Lesser Final Approval Decl. Ex. B.

Unquestionably, counsel on both sides have the experience, skill and knowledge to assess the

merits of the action and to make an informed recommendation regarding the wisdom and fairness

of the Settlement.  Indeed, "[t]he greater experience that class counsel possesses, the greater

weight a court tends to attach to counsel's opinions on fairness, adequacy, and reasonableness."

Moore, *supra*, ¶ 23.85[2].

In light of the considerable risks and delays attendant upon obtaining any recovery had

the parties not agreed to settle this action, Plaintiffs are satisfied that the Settlement is a very

favorable resolution of this litigation.  The Court should defer to the judgment of experienced

trial counsel who has evaluated the strength of his case.  *Cotton v. Hitton*, 559 F.2d at 1330

(citation omitted); *see also Giusti-Bravo v. United States Veterans Admin.*, 853 F. Supp. at 40.

### 7.   The Range of Reasonableness of the Settlement Amount

A reasonable settlement is not determined by a hard and fast mathematical equation

yielding a particularized sum.  Rather, "in any case there is a range of reasonableness with

respect to a settlement...."  *Relafen Antitrust Litig.*, 231 F.R.D. at 73 (citing *Newman v. Stein*,

464 F.2d 689, 693 (2d Cir. 1972)); *see also Faneuil Hall*, 671 F. Supp. at 826.

Courts routinely approve proposed settlements even though the benefits amount to less

than the recovery sought.  *Officers For Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 628 (9th

Cir. 1982); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1391, 1417

(D. Ariz. 1989), *aff'd sub nom.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1292 (9th Cir.

1992).[10]  Here, although there are numerous ways to extrapolate damages and the parties take

---

[10] "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  *City of Detroit v. Grinnell Corp.*, 495 F.2d at 452, 455 n.2 (2d Cir. 1974); *accord*, *Weinberger v.*

different positions as to what measure of damages would be applicable, using what Class

Counsel believe to be a reasonable litigation result (and the one that Class Counsel obtained in

their jury case against Staples), the settlement represents approximately 70% of the total possible

recovery using Plaintiffs' damage measure.  Lesser Final Approval Decl. ¶ 23.

Beyond any question, this is a most satisfactory result for a settlement reached early in

the litigation, and clearly falls within the range of reasonableness as recognized by the relevant

case law.  *See Relafen Antitrust Litig.*, 231 F.R.D. at 74 (approving settlement representing 26%

of the damages estimated by plaintiffs' expert and 55% of the damages estimated by defendants'

expert); *In re Ikon Office Solutions Inc. Sec. Litig.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000)

(approving settlement amounting to 5.2% of potential recovery).  In light of the various risks

detailed above, the Settlement thus represents a very fine recovery.

### C.   Class Counsels' Request for An Award of Fees and Reimbursement of Expenses Should Be Approved

#### a.   Class Counsels' Request for Attorneys' Fees Is Reasonable and Should be Approved by the Court

Pursuant to Rule 23(h) and Rule 54(d)(2), Class Counsel seeks an award of attorneys'

fees in the amount of $2,470,894, essentially 27% (26.9%) of the common fund created by the

Settlement.  After negotiation, Defendant agreed to pay this amount of the fund as attorneys' fees

and not to oppose Class Counsel's application.

As is the case with most federal courts, this Court uses the "percentage-of-recovery"

method in determining attorneys' fee awards in common fund cases.  *See Blum v. Stenson*, 465

U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a

percentage of the fund bestowed on the class").  In *In re Thirteen Appeals of Arising out of the*

*Kendrick*, 698 F.2d 61, 65 (2d Cir. 1982) (Second Circuit upheld a settlement which amounted to
"only a negligible percentage of the losses suffered by the class").

*San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d at 295 (1ˢᵗ Cir. 1995), the First Circuit joined

the overwhelming majority of courts that have adopted the percentage of a common fund as the

basis for awarding fees.  In *Thirteen Appeals*, a group of plaintiffs' lawyers objected to the

district court's distribution of attorneys' fees and argued that the district court erred "as a matter

of law" in awarding fees under the percentage of the fund method.  The First Circuit

emphatically rejected this contention, holding that in a common fund case a district court may

calculate fees based on the percentage of the fund ("POF") created:

> Our decision is driven both by <u>our recognition that use of the POF
> method in common fund cases is the prevailing praxis</u> and by the
> distinct advantages that the POF method can bring to bear in such
> cases.

56 F.3d at 307 (emphasis added).  As the First Circuit explained:

> In complex litigation -- and common fund cases, by and large, tend
> to be complex -- the POF approach is often less burdensome to
> administer than the lodestar method.  [citation omitted.]  Rather
> than forcing the judge to review the time records of a multitude of
> attorneys in order to determine the necessity and reasonableness of
> every hour expended, the POF method permits the judge to focus
> on "a showing that the fund conferring a benefit on the class
> resulted from" the lawyers' efforts....[citation omitted.]
>
> For another thing, <u>using the POF method in a common fund case
> enhances efficiency, or, put in the reverse, using the lodestar
> method in such a case encourages inefficiency.  Under the latter
> approach, attorneys not only have a monetary incentive to spend as
> many hours as possible (and bill for them) but also face a strong
> disincentive to early settlement</u>....[citation omitted.]  If the POF
> method is utilized, a lawyer is still free to be inefficient or to drag
> her feet in pursuing settlement options -- but, rather than being
> rewarded for this unproductive behavior, she will likely reduce her
> own return on hours expended.
>
> Another point is worth making: because the POF technique is
> result-oriented rather than process-oriented, it better approximates
> the workings of the marketplace.  We think that Judge Posner
> captured the essence of this point when he wrote that "the market
> in fact pays not for the individual hours but for the ensemble of

> services rendered in a case of this character."  [citation omitted.]
> In fine, the market pays for the result achieved.

*Id.* (emphasis added).

The percentage method "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).

There is no hard and fast rule mandating a certain percentage of a common fund that may reasonably be awarded as a fee.  The amount of any fee must be determined upon the facts of each case.  The ordinary contingency fee arrangement is usually for one-third of the settlement fund.  *See Furtado v Bishop*, 635 F.2d 915, 917 (1st Cir. 1980); *accord Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, *J.*, concurring).  The Manual for Complex Litigation (Fourth) instructs that "fees awarded under the percentage method are often between 25% and 30% of the fund," Manual for Complex Litigation (Fourth) § 14.121, a view with which Judges in this Circuit agree.  *See, e.g.*, *Mazola v. May Dep't Stores*, 1999 WL 1261312 at *4 (D. Mass.) ("in this circuit, percentages of the fee awards range from 20% to 35% of the fund"); *In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 109 (D.R.I. 1996) ("In common-fund cases, the majority of attorney fee awards fall between 20% and 30% of the fund.").[11]  It is sometimes stated that 25% is a "benchmark"

---

[11] Judges in this Court have commonly held that 25-30% is the recognized range of recovery for common fund cases:

> In the normal range of common fund recoveries, common fee awards fall in the 20 to 30 percent range.  The median of this usual range is 25 percent.  As an alternative to an initial focus on the recognized percentage range of common fund fee awards for cases that do not present extraordinary circumstances, this median 25 percent figure can be considered by the courts in their discretion as a reasonable and convenient starting point, norm, for common fund awards, from which deviation should be made as the court

amount, *see, e.g.,* Manual for Complex Litigation, *supra*; *Mazola*, 199 WL 1261312 at *4, and

the requested award 2% above that is, Class Counsel respectfully submit, reasonable inasmuch as

the results for the Class here exceed those in a typical case by a substantial margin, the amount

that Class Members will be receiving being a most substantial portion of their potential claim

value.

Three points are of note in regards to Class Counsel's request.

*First*, as noted, is the degree of what has been obtained for the Class.  This Settlement

provides a "true" value of nearly all of the potential damage claims that could have been

asserted.  *Compare, e.g.*, *Gov't Emples. Hosp. Ass'n v. Serono Int'l*, 246 F.R.D. 93, 96 (D. Mass.

2007) (noting distinction courts have drawn between "true class funds" and other settlements).

*Second,* the recovery was obtained in a most expeditious manner.  That the case resolved

expeditiously and without delay is, here, a factor that particularly supports a 27% requested fee.

So, too, is the fact that Defendant's counsel approached Class Counsel early in the case at least

in part of the recognition of Class Counsel's experience and reputation, *see* Lesser Decl. in

Support of Preliminary Approval.  In *Thirteen Appeals*, the First Circuit recognized, for instance,

an advantage of the percentage method is that it does not create a "disincentive for the early

settlement of cases."  56 F.3d at 307.  Likewise, it is recognized that "[e]fficient prosecution of

plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's

representation here….[A] prompt and efficient attorney who achieves a fair settlement without

litigation serves both his client and the interests of justice."  *Maley v. Del Global Techs. Corp.*,

186 F. Supp. 2d 358, 373 (S.D.N.Y.) (*citing McKenzie Constr. Inc. v. Maynard*, 758 F.2d 97,

---

considers various relevant fee determinations.

*See In re Molten Metal Tech., Inc. Sec. Litig.*, C.A. No. 97-10325-MLW, August 6, 2001
Transcript of Final Approval Hearing, pp. 31-32.

101-02 (3d Cir. 1985)); *In re M.D.C. Holdings Secl. Litig.*, 1990 U.S. Dist. LEXIS 15488 at *21

(S.D. Cal. Aug. 30, 1990) ("Early settlement benefits everyone involved in the process and

everything that can be done to encourage such settlements – especially in complex class action

cases – should be done.").

     *Third*, here, as noted, Class Counsel utilized informal discovery both prior to and after

the mediation to focus the issues for the mediation and to ensure that the Settlement reached was

a fair and reasonable one.  This efficient process is a factor in favor of the award requested.  *See*

*In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109, 133 (D.N.J. 2002) ("Informal discovery

leading to an early settlement that avoids such [formal discovery] costs favors approval of the fee

application.");  *see also Deckler v. Ionics Inc., et al.,* No. 03-cv-10393-WGY (D. Mass Apr. 4,

2005) (approving 30% fee award in a pre-discovery settlement).

     *Fourth*, and not insignificantly, as discussed, the Notice that was sent to the Class stated

that Class Counsel would be seeking a fee of no more than <u>30%</u>.  No Class members objected to

such a potential request of 30%.  Here, Class Counsel is actually now requesting an award of

27% and the lack of any objection to a 30% potential requests speaks loudly from the Class (over

80% of which has filed claim forms to date) that it believes that the attorneys should be paid such

an amount for their services in obtaining the monies that the Class will be received.  "The

reaction of the Class," to a fee request "is entitled to great weight by the Court."  *Maley*, 186 F.

Supp. 2d at 374; *see also In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 985 F. Supp. 410,

416 (S.D.N.Y. 1997) ("Numerous courts have noted that the lack of objections from members of

the class is among the most important factors in determining the reasonableness of the requested

fee.").  Certainly, this consideration should be accorded weight by this Court.

     With these considerations noted, it is worth turning to the list of factors that are often

specifically considered for common fund fee determinations.  The First Circuit in *Thirteen Appeals* did not provide a definitive list of factors for the fee determination.  *See In Re: Lupron(R) Marketing and Sales Practices Litig.*, 2005 U.S. Dist. LEXIS 17456, at *12 (D. Mass. Aug. 17, 2005) (Stearns, J.) ("*Lupron*") ("the First Circuit does not mandate the weighing of any specific set of factors in assessing a common fund fee request").  There, the First Circuit approved an attorneys' fee award of 30.9%  of a $220 million recovery, or $68 million in attorneys' fees.  However, relying on factors employed in other Circuit courts, courts within this District have embraced the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any.

*Id.; see also In Re Relafen Antitrust Litig.*, 231 F.R.D. 52, 79 (D. Mass. 2005) (Young, J.) (for a substantially similar formulation adding "the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel").  Application of each of these considerations here supports the requested fee.

*Size of Settlement/Number of Persons*.  The Settlement provides the Class with a $9.195 million recovery obtained in an expeditious manner.  As discussed, 77% of the Class of 2,803 have already joined and their recovery will be a most substantial part of their potential damages. This consideration is thus met.

*Skill/Experience and Efficiency of the Attorneys.*  Class Counsel respectively submit that the Settlement – the results it will provide to the Class – arises, in no insubstantial manner, from our experience and reputation, which has already been discussed.  The speed with which it was obtained also results, at least in some manner, from that experience and reputation.  *See* Lesser

28

Declaration in Support of Preliminary Approval at ¶ 6; *see also, e.g.*, *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (recognizing undersigned counsel as "experience[d] in handing wage and hour class actions and [having] knowledge of the applicable law" in being appointed class counsel); *Wilson v. The County*, C.A. 06-1368, Transcript of Hearing on Final Approval (D.N.J. March 18, 2010) (stating as to the undersigned, on the record, at recent class action final settlement approval hearing, "The court already held that class counsel was adequate in the context of class certification. But more than just adequate, class counsel's performance in this case has been exemplary.").  Defendants, in turn, were ably represented by a prominent law firm with experience and expertise in this type of litigation.  "The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel."  *Maley*, 186 F. Supp. 2d at 373.

Further, the fact that such a significant proportion of the Class has made claims, and therefore ultimately will get paid, also derives from Class Counsel's experience in looking out for the classes they represent.  Class Counsel sought, as material terms of the Settlement, and BJ's agreed, that notice be provided by direct mail, that there be a searching for unreturned forms, that there be a second mailing, and that each Class Member be informed of his/her recovery.  These points were all included and can only have made a material difference in the exceptional claims rate that this Settlement has had and ultimately will evidence.

In addition, Class Counsel respectfully submit that they conducted themselves in this action in a professional, diligent manner.  Even with the effort expended by Class Counsel, the prosecution of this action proceeded in an efficient manner.  Work was handled by the various attorneys involved in the case primarily by those who had the greatest experience in the relevant area and time was not wasted by multiplicity of attorneys assigned to the same tasks.  Where

necessary, further, legal assistants and paralegals were employed.  The assignments that were

necessary were given to those individuals known to have abilities and expertise in those areas.

Lesser Final Approval Decl. ¶ 12.  The litigation efforts were focused on the main goals and

undertaken to avoid waste as is evidenced by the manner in which Class Counsel agreed to

mediation and requested pre- and post-mediation informal discovery.  Id.  In short, Class

Counsel prosecuted the litigation efficiently without the need to "re-invent the wheel" in almost

any aspect.  Id.

     *Complexity & Duration*.  The present case had all the hallmarks of what could have

been a complex and extended FLSA and state law litigation.  As the Supreme Court has

recognized, "FLSA claims typically involve complex mixed questions of fact and law . . . .

These statutory questions must be resolved in light of volumes of legislative history and over

four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best*

*Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).  The similar *Stillman v. Staples* litigation

demonstrates how such a case, with similar claims also involving retail assistant store

managers, can extend over years, can lead to complex legal and factual adjudications, and

require a substantial trial effort..  While (and this is a positive factor) the case was resolved

expeditiously and with less time and effort than it would have required had it, like *Stillman,*

proceeded forward through to trial, it still nonetheless required not insubstantial effort by

Class Counsel involving prefiling investigation, filing, the informal discovery (including

document review and interview of a corporate witness as well as discussions with the named

Plaintiffs and Class members), preparation for and attendance at the mediation, post-

mediation discussions and negotiation of specific terms of the Settlement, the creation and

production of settlement documentation and requests and calls for information from Class

members.  Class Counsel has put in over 600 hours in the litigation, Lesser Final Approval

Decl. ¶ 10, and if the Court approves the Settlement, it will be necessary for Class Counsel to

devote many additional hours to the settlement administration process, for which they will

receive no additional compensation.  Based upon our experience that is likely to require a

10% increase in time, as the case resolves, based upon our experience of similar cases.

Lesser Final Approval Decl. ¶ 11.  Predominantly, however, it was the expedition with which

Class Counsel obtained the Settlement of a potential complex litigation that meets this factor.

   *Litigation Risks*.  This point has been addressed above and need not be repeated in full

here.  However, what the risk of nonpayment is perhaps what should be the paramount

consideration of the various fee factors:  "Many cases recognize that the risk assumed by an

attorney is perhaps the foremost factor in determining an appropriate fee award."  *Lupron*, 2005

U.S. Dist. LEXIS 17456, at *15-16 (internal quotations omitted).  The contingency risk here was

significant from the outset and supports the requested fee.  Class Counsel undertook this action

on a strictly contingent-fee basis, and invested a substantial amount of time and money to

prosecute the action with no guarantee of compensation or recovery of out-of-pocket costs.

There was a substantial risk of nonpayment in the event this action was dismissed at the pleading

or summary judgment stages.  *See Maley*, 186 F. Supp. 2d at 372 ("Class Counsel undertook a

substantial risk of absolute non-payment in prosecuting this action, for which they should be

adequately compensated.") (citations omitted); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d

393, 399 (S.D.N.Y. 1999) (class counsel not only undertook risks of litigation, but advanced own

funds and financed litigation).  That risk was present from the first day of the action and while it

was avoided due to the Settlement, the risk was always there and this factor supports the fee

application.

*Amount of Counsel Time*.  This point was addressed above and does need to be repeated

here.  Class Counsel respectfully suggest that while they could have incurred more time, the

counsel fee requested is reasonable because Class Counsel should be rewarded, not penalized,

for recognizing the strengths and weaknesses of the case and for being able to settle it on very

favorable terms earlier, rather than spending extra time possibly to obtain a result that may be

years from now – doing so has saved not only the Class from incurring more time and additional

out-of-pocket costs, it also saved Defendant money and thereby aids the Court system as a

whole.  In other words, while Class Counsel's time could have been greater, the fact that it was

not should not be held against Class Counsel because they put the Class's interest first agreeing

to mediate and to resolve the case quickly and thereby obtain not only an excellent result but

obtain one in short order.

*Awards in Similar Cases*.  The requested fee is well within line with similar awards in

other FLSA cases.  Thus this Court also awarded a 25% fee in *Wood v. ZC Management, LLC*,

C.A. No. 07-30076-MAP (D. Mass. June 9, 2009 [ECF Docket Nos. 60 & 64]), another wage

and hour case that settled early and without formal discovery.  *See also Macone v. Pongratz*,

C.A. No. 07-11360-PBS (D. Mass. Sept. 16, 2008) (33% award in wage and hour case); *Kane v.*

*Gage  Merchandising Services, et al.*, C.A. No. 00-40185-NMG (D. Mass. June 28, 2002)

(awarding attorney's fees of one-third from a settlement fund of $690,000 in a FLSA collective

action); *Loughran v. USAA, Inc.*, C.A. No. 00-12387-RWZ (D. Mass. Oct. 19, 2002) (awarding

attorneys' fess of one-third from a settlement fund of $820,000 in a FLSA collective action);

*Dooley v. Liberty Mutual Ins. Co.*, C.A. No. 01- 11029-REK (D. Mass.) & *McLaughlin v.*

*Liberty Mutual Ins. Co.,* C.A. No. 01-11029-REK, (D. Mass. Dec. 21, 2005) (consolidated cases; awarding $1.8 million in counsel fees, which was 28% of $6.4 million settlement involving both FLSA collective actions and a Rule 23 Massachusetts overtime class claim). The requested fee of 27% falls directly in the middle of all of these cases – and is accordingly reasonable for all the reasons set forth herein. It is further worth noting that a Third Circuit decision that undertook to look at 289 settlements concluded that the fee award averaged "31.71% with a median value that turns out to be one-third." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3rd Cir. 2005). "[T]he fact that the requested fee represents a percentage of recovery at or below the traditional range for similarly situated settlements… supports the conclusion that it is reasonable." *Lan*, 2008 WL 763763, *25. Given that the fee request here is towards the lower end is particularly reasonable given the results obtained.

*Public Policy Considerations.* Important public policy considerations also support approval of the requested fees. In considering attorneys' fees, courts are mindful that such awards serve the dual purpose of encouraging representatives acting as "private attorneys' general," to seek redress for damages to entire classes of persons and discouraging future misconduct of a similar nature. *See Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968), *rev'd on other grounds*, 438 F.2d 825 (2d Cir. 1970) ("Every successful suit duly rewarded encourages other suits to redress misconduct and by the same token discourages misconduct which would occasion suit."). *See also In re RJR Nabisco Inc. Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) & 96,984, at 94,268 (S.D.N.Y. Aug. 24, 1992) ("The prospect of handsome compensation is held out as an inducement to encourage lawyers to bring such suits") (quoting *Dolgow*, 43 F.R.D. at 494). The FLSA and its state law analogs are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490,

493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work").  Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes.  Particularly where, as here, the settlement fund is (relatively) small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank*, 228 F.R.D. at 189.  If courts denied "fees sufficient to compensate counsel for at least a substantial portion of the work [they] . . . performed, no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id*.

**D.      Class Counsel's Request for Reimbursement of Expenses Should Be Approved**

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to reimbursement of reasonable litigation expenses and costs from the fund.  *See In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) (class counsel creating a common fund is entitled to recover "expenses, reasonable in amount, that were necessary to bring the action to a climax"); *Fanuiel Hall*,  671 F. Supp. at 833 ("In addition to attorneys' fees, plaintiffs' attorneys are also entitled to reimbursement of reasonable and necessary out-of-pocket expenses.").  Here, Class Counsel seek reimbursement of expenses in an amount of $10,620.70.  These expenses were all reasonable, necessary and directly related to the prosecution of this litigation.  They were expended to cover costs associated with the mediation (over $7,000), legal research, travel, meals, transportation, court fees, mailing, postage, and telephone.  These reasonable expenses are documented on the books of Class Counsel and are reasonable in relation to the Settlement Fund and should be awarded.  Lesser Final Approval Cert. at 26.  *See Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *see also Fanuiel Hall*¸ 671 F. Supp. at 826 (approving an award of expenses of $20,000); *Lan v. Ludrof*, 2008 WL 763763

(W.D. Pa. March 21, 2008) (reimbursement of expenses in the amount of $66,080.81); *In re Rent-Way*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003) ($283,907 awarded in expenses).

### E.    The Incentive Awards to Kevin Caissie, Greg Bryant and Lee Smith Should Be Approved

The Settlement provides for service bonus awards for the three Class Representatives of $10,000 each.  These Plaintiffs provided support to this litigation by agreeing to step forward to serve as the Class Representatives, and fulfilled their commitments in that regard.  Each assisted Class Counsel materially with the case.  Lesser Final Approval Cert. ¶ 27. The requested service awards should be approved because, as it has frequently been recognized, "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred."  *In re S. Ohio Correction Facility*, 175 F.R.D. 270, 220 (S.D. Ohio 1997), *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005); *see generally* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006) (finding twenty-eight percent of settled class actions between 1993 and 2002 included an incentive award to class representatives).[12]  The request for service awards was set forth in the Notice and no Class Members objected.

Class Counsel respectfully requests that the incentive awards be approved.

---

[12] The cases recognizing that there are public policy reasons for encouraging individuals with relatively small personal stakes to serve as class plaintiffs in meritorious cases are legion.  *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (incentive award of $25,000 to named plaintiff); *In re Cendant Corp.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002); *Sylvester v. Cigna Corp.*, 369 F. Supp. 2d 34 (D. Me. 2005); *In re Immunix Sec. Litig.*, 864 F. Supp. 142 (W.D. Wash. 1994) (eleven named plaintiffs shared $25,000 each); *Lazy Oil Co. v. Witco Corp.,* 95 F. Supp. 2d 290, 324-25 (W.D. Pa. 1997) (incentive awards of $5,000 to $20,000 awarded); *Godshall v. Franklin Mint Co.*, 2004 WL 2745890, *4 (E.D. Pa. Dec. 1, 2004) ($20,000 to each named plaintiff); *Genden* v. *Merrill Lynch,* 700 F. Supp. 208, 210 (S.D.N.Y. 1998) (granting incentive awards of $20,085 for each class representative).; Rubenstein et al., *Newberg on Class Actions*, *supra* § 11:38.

35

## V.        <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court grant, in its

entirety, Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement, for an

Award of Expenses and Attorneys' Fees, and for Approval of Incentive Awards to the Class

Representatives.

Respectfully submitted,


<u>/s/  Seth R. Lesser, Esq.</u>
Seth R. Lesser, Esq.
Fran L. Rudich, Esq.
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone:     914.934.9200
Facsimile:     914.934.9220

Attorneys for Plaintiffs and the Class